Chief Judge Breitel.
Defendant appeals from a conviction for abortion in the second degree, after a jury trial (Penal Law, § 125.40). He was sentenced on five counts to concurrent terms of up to four years imprisonment.
Defendant contends that slips of paper, listing women upon whom he had performed abortions, were obtained by illegal search and seizure. The conviction should be affirmed. The search and seizure of the slips of paper from a police property envelope, in which defendant’s possessions previously on his person had been placed after arrest, was reasonable. The search and seizure did not, either in nature, intensity or duration, intrude upon defendant’s reasonable expectation of privacy.
On April 20, 1970, the Buffalo Police Department received a call from a hospital about an abortion. At the hospital, a physician informed the responding officer that a particular young woman had been the subject of an abortion. The officer reported the information to the police homicide office without further investigation.
The next morning a detective and a policewoman interviewed the young woman at the hospital. She informed them that the abortion, performed in a private apartment, had been arranged by telephone with a person called ‘ ‘ Gary the Foot ’ ’. She gave them a slip of paper with Gary’s telephone number, and described the man who had performed the abortion as about 35 years of age, tall, and husky. The telephone number proved to be that of one Gary Faulman.
On the evening of the day when the young woman had been questioned, the police interviewed Faulman at the police station. A detective noted that Faulman had a club foot, suggestive of the epithet used to describe the man who had arranged the abortion. Faulman admitted making the arrangements. He also told the police that defendant was his “ contact ” and gave them defendant’s address and telephone number. Faulman described defendant as being six-foot one-inch tall, 200 pounds, *465 with dark hair, and a prominent nose. He characterized defendant’s build as being stocky to heavy. Faulman said that defendant was the one who had performed the abortion, and had performed others as well.
Defendant was arrested at his home at 2:30 a.m. the following morning, given an opportunity to dress and assemble his personal effects, and taken to police headquarters. After being warned of his rights to remain silent and to have counsel, his refusal to answer any questions was honored and he was given an opportunity to telephone his lawyer. During the police station booking, and in accord with general police practice, defendant was asked to empty his pockets. Among his personal effects were six separate singly-folded slips of paper inside an address book. An officer observed the name of the woman who had sustained the abortion on one of the slips.
Defendant’s immediate personal effects, including the address book and slips of paper, were placed inside a clasp envelope and defendant given a detailed receipt. Within a half hour, the officer told a detective about the slips of paper. Promptly, the address book and papers were removed from the envelope.
Depending upon the extent of intrusion upon a person’s privacy, corresponding levels of cause and justification are required. Once a person or his effects have been reduced to custodial control in the law enforcement system his privacy has been intruded upon. The permissible scope of the intrusion, given adequate cause," depends upon the crime involved, the individual characteristics of the accused or suspect, and the point in the investigation or detention at which the intrusion occurs. (Terry v. Ohio, 392 U. S. 1, 16-18.)
The greater the intrusion into the privacy or the restriction of the freedom of the person the greater the justification required (see, e.g., Terry v. Ohio, supra, at pp. 25-26 [“ stop and frisk ”]; People v. Rosemond, 26 N Y 2d 101, 105 [“ stop and frisk ”]; CPL 140.50 [“ stop and frisk ”]; Beck v. Ohio, 379 U. S. 89, 96-97 [arrest]; CPL 140.10, subd. 1 [arrest]; Spinelli v. United States, 393 U. S. 410, 412-413 [house search]; People v. Hendricks, 25 N Y 2d 129, 136-137 [house search]; CPL 690.35 [search warrant]). And, of course, if a greater intrusion is justified, a lesser related intrusion is unobjectionable.
*466 The arrest of defendant was based upon probable cause. From the information provided by the abortion subject the police had reason to believe that Faulman had arranged for the abortion. His statements, in turn, were based on his asserted personal knowledge that defendant was involved in the abortion, in one way or another. At this point, the police belief that defendant was the abortionist rested ‘ ‘ on something more substantial than a casual rumor circulating in the underworld or * * * an offhand remark heard at a neighborhood bar ” (Spinelli v. United States, 393 U. S. 410, 416-417, supra). Moreover, the description of defendant by Faulman closely paralleled that of the man described by the woman as performing the abortion. This independent corroboration of the description and the accomplice’s self-inculpating statement involving defendant were sufficient to establish further the reliability of Faulman’s statements (see People v. Wheatman, 29 N Y 2d 337, 345, cert, den. 409 U. S. 1027; United States v. Harris, 403 U. S. 573, 583-584). Consequently, Faulman’s specific reliability in this instance and his asserted personal knowledge of defendant’s arrangements to perform the abortion constituted probable cause to arrest defendant (People v. Hendricks, 25 N Y 2d 129, 134, supra; Spinelli v. United States, 393 U. S. 410, 416, supra).
It is only “ unreasonable ” searches and seizures which are prohibited by the State and Federal Constitutions (N. Y. Const., art. I, § 12; U. S. Const., 4th Amdt.; Elkins v. United States, 364 U. S. 206, 222). Thus far, absent specified categorical exceptions, the Fourth Amendment has been interpreted as requiring searches to be conducted pursuant to a warrant (Coolidge v. New Hampshire, 403 U. S. 443, 455; but see United States v. Edwards, 415 U. S. 800, 802). A warrant, however, is not required even where it is not impractical to secure one, if the search and seizure falls within one or more of the categorical exceptions (Chambers v. Maroney, 399 U. S. 42, 51-52; Cooper v. California, 386 U. S. 58, 62). The reasonableness of a search is the controlling question and the individual’s reasonable expectation of privacy is a significant factor in determining reasonableness (Katz v. United States, 389 U. S. 347, 351-353).
It is, of course, lawful to search a person incident to his arrest (Chimel v. California, 395 U. S. 752, 762-763). The rationale usually articulated for this type of search is the need to prevent *467 the arrested person from using an available weapon or destroying evidence (pp. 756, 762-763). This is too simple an explanation. A person under effective police control is hardly in a position to use a weapon or destroy evidence (People v. Fitzpatrick, 32 N Y 2d 499, 508-509.). In situations where searches at a police station of effects already seized have been upheld as being incident to an arrest, there is obviously no real danger that a weapon could be used or evidence destroyed (see, e.g., Abel v. United States, 362 U. S. 217, 238-239 [a suitcase] ; United States ex rel. Muhammad v. Mancusi, 432 F. 2d 1046, 1048, cert. den. 402 U. S. 911 [a briefcase]). Indeed, even legitimate concern about a weapon could be alleviated by a considerably lesser intrusion than, say for example, the search of a suitcase already seized. The concern over possible destruction of evidence in police custody could be met merely by holding the suitcase along with other personal effects and obtaining a warrant. There is no such restrictive requirement (see, e.g., United States v. Edwards, 415 U. S. 800, 807, supra; Abel v. United States, supra; Evalt v. United States, 382 F. 2d 424, 427 [a knapsack] ; Baskerville v. United States, 227 F. 2d 454, 455 [Phillips, O. J.] [a police property envelope]).
The reason searches of a person and his immediate effects at a place of detention are permissible lies not in the fiction that they are incident to arrest but because of the maximum intrusion already effected by an arrest and detention pending arraignment (but see United States v. Edwards, 415 U. S. 800, 805, supra). The warrant clauses were, on the other hand, designed to protect a person’s privacy in his home, office, and automobile, and even a public telephone booth, where he has a reasonable continuing expectation of privacy (Chimel v. California, 395 U. S. 752, 766-767, n. 12, supra-, Coolidge v. New Hampshire, 403 U. S. 443, 458-464, supra; Katz v. United States, 389 U. S. 347, 352, supra; see, also, Stanford v. Texas, 379 U. S. 476, 482 et seq.; Entick v. Carrington, 19 Howell State Trials 1029, 1064).
Given the nature of the gross instrusion by detention of the person it is reasonable to conduct a less intrusive search of his person and the possessions he carried with him.„ If logic, to the minds of some, may not seem to compel the rule, history supports it and precedents justify it.
*468 To be sure, an arrest for a particular offense may not carry with it the right to engage in a full-blown search of the person or his belongings, because as a matter of State law such searches are found to be unreasonable (see, e.g., People v. Marsh, 20 N Y 2d 98, 101-102; People v. Coleman, 24 N Y 2d 1005, 1007; but see United States v. Robinson, 414 U. S. 218). Moreover, an arrest of1 a person will not justify a search of his entire home of other area in which he maintains a reasonable expectation of privacy, the arrest notwithstanding (Chimel v. California, 395 U. S. 752, 764-765, supra). This is so because the intrusion required for such searches is of a greater magnitude than the gross personal intrusion of the arrest and the personal search incident to it.
Defendant had been arrested and in custody to be continued at the police station. The search and inventory of his immediate personal effects were therefore a necessary and reasonable intrusion. The reasonableness of the search stems not only from the administrative and security requirements of detention but because it is a lesser intrusion of the larger seizure and detention of the person. That defendant’s immediate effects had also been searched after being secured in a receipted clasp envelope does not affect the principle. “ [I] t is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office or a hotel room ” (Lanza v. New York, 370 U. S. 139, 143; see, also, Katz v. United States, 389 U. S. 347, supra; People v. Lopez, 60 Cal. 2d 223, 248). Searches and seizures similar to or even broader than that conducted here have been upheld (see, e.g., Abel v. United States, 362 U. S. 217, 239, supra; United States ex rel. Muhammad v. Mancusi, 432 F. 2d 1046, 1048, supra; Baskerville v. United States, 227 F. 2d 454, 456, supra).
Having seen the name of the abortion subject on one of the slips of paper the police officer had more than probable cause to believe, indeed he knew, that the property envelope contained evidence of the crime for which defendant was in lawful custody.[1] As noted earlier, there is no requirement of a warrant for such a search.
*469 This is not to say, however, that circumstances never arise in which evidence protected by a privilege may be inadmissible at trial despite its “ seizure ” from a person in lawful custody at a place of detention (see Lanza v. New York, 370 U. S. 139, 143-144, supra; North v. Superior Ct., 8 Cal. 3d 301, 310-311; People v. Lopez, 60 Cal. 2d 223, 248, supra; as to personal effects, compare Warden v. Hayden, 387 U. S. 294, 303 with United States v. Bennett, 409 F. 2d 888, 896-897[2] and United States v. Frankenberry, 387 F. 2d 337). Moreover, some searches or seizures, absent exigent circumstances, may be unreasonable as being too great an intrusion upon the individual’s person or his personal belongings (cf. Schmerber v. California, 384 U. S. 757, 770 [blood extraction]; United States v. Lefkowitz, 285 U. S. 452, 464—466 [entire contents of one room office]).
Defendant did not have to take his address book and the slips of paper with him to the police station. Had he left them at home, to seize them a warrant would have been first required (Chimel v. California, 395 U. S. 752, 763, supra). Once the items were at the station house they were subject to scrutiny and seizure and whether that scrutiny and seizure took place during the administrative process or after being placed in a property envelope is of no legal significance.
Accordingly, the order of the Appellate Division should be affirmed.

. Assuming, what it is not necessary to decide in this case, that probable cause is necessary to search a police property envelope. The eases discussed earlier • suggest that probable cause may not be necessary.

. See cert. den. sub nom. Thomas v. United States (402 U. S. 984); Jessup v. United States (396 U. S. 852).