Wachtler, J.
(dissenting). I dissent and would affirm the order of the Appellate Division. The dire prophecy of Mr. Justice Frankfurter in United States v Rabinowitz (339 US 56, 80) has come to pass. The exceptions have finally consumed the rule. The majority holds today that the police may search an arrestee’s home as long as they have a reasonable belief that evidence is present and that they refrained from a more outrageous intrusion. This holding adopts the rule of Harris v United States (331 US 145) and United States v Rabinowitz (supra), which was expressly overruled by the Supreme Court in Chimel v California (395 US 752) and contravenes the tightly guarded exception articulated in Chimel. Consequently, the majority opinion extends the concept of search incident to arrest far beyond the limits permissible under the Constitution. Indeed, the majority lacking conventional authority has seen fit to spawn a new rubric — search consequential to arrest. Interestingly, this radical departure from established principles (see, e.g., People v Chiagles, 237 NY 193 [Cardozo, J.], and cases cited therein) was accom *686 plished without reference to New York authority.[1]
The right of the People to be secure from unreasonable searches and seizures is enunciated by the Constitution (US Const, 4th Admt; NY Const, art I, § 12). The Supreme Court has declared that warrantless searches are per se unreasonable (Coolidge v New Hampshire, 403 US 443, 454; Chimel v California, supra). Despite this unequivocal declaration, there are certain exceptions which are recognized in deference to practical realities. These exceptions, however, are "jealously and carefully drawn” (Jones v United States, 357 US 493, 499) and tightly guarded (Katz v United States, 389 US 347, 357). Before proceeding to my consideration of the exception presented here, two fundamental aspects of this constitutional doctrine must be noted. First, it is conceptually untenable to justify a warrantless search or seizure in the absence of exigent circumstances (Coolidge, supra, at p 471). "Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause” (Agnello v United States, 269 US 20, 33). Second, where a warrantless search or seizure has been effected and the evidence thus acquired is challenged, the burden is on the State to show the existence of an exceptional situation justifying the police action (Vale v Louisiana, 399 US 30; Coolidge, supra, at pp 454-455). In the instant case the People contend the warrantless search of defendants’ apartment and seizure of contraband in the bedroom was justifiable as incident to their arrest.
The People voice two propositions in support of their theory which may be synthesized as follows. First they contend that narcotics are easily disposed of and transported, therefore time was of the essence. Apparently, they would have our court fashion a rule which would dispense with the warrant requirement whenever narcotics are involved. This is a patently unacceptable approach. Next, the People assert that defendants were "apparent members of the drug culture” who *687 lacked roots in the community, consequently police action was imperative lest the narcotics disappear. This argument is absolute speculation. Not only has there not been a finding of fact in this regard but the record is totally devoid of evidence with respect to defendants’ subculture affinities or connection to the community. In the face of such specious attempts to rebut the presumptive unreasonableness of the instant search, it is hard to comprehend the majority’s conclusion.
Nevertheless the court somehow finds exigency by virtue of the nature of the evidence, the informer’s anxiety and the subjective, albeit groundless, conclusion by the police that action was imperative. The majority bolsters the dubious exigency by rationalizing that any alternative course of action would have been a greater intrusion of the defendants’ rights.
I disagree with both aspects of the majority opinion. The search here was not justifiable as incident to arrest, nor on the grounds that police action was imperative.
A search "incident to arrest” is strictly limited to the defendants’ "grab area” (Chimel, supra). The justification for this exception is predicated on the fact that an arrested person is likely to destroy any incriminating evidence or to use available means to effect an escape. To the extent that both possibilities represent stark reality, a warrantless search is permissible; where these possibilities do not exist a warrant-less search is not permissible. In accordance with the practical considerations the grab area has been interpreted to mean the area within the defendant’s reach at the time of arrest and any personal effects within that area. Recent Supreme Court cases comport with this interpretation. (See, e.g., Cupp v Murphy, 412 US 291 [scraping of underside of defendant’s fingernails when it appeared that he was attempting to destroy evidence upheld as incident to arrest]; United States v Edwards, 415 US 800 [search of defendant’s clothes, after incarceration, for paint chips upheld as incident to arrest]; Vale v Louisiana, supra [search of defendant’s house after he was arrested outside held violative of constitutional rights]; see, also, United States v Robinson, 414 US 218.) New York cases have adopted a similar interpretation of Chimel, one which is strictly limited to a search of the defendant (People v Troiano, 35 NY2d 476; People v Marsh, 20 NY2d 98); the premises within the arrestee’s immediate control (People v Brosnan, 32 NY2d 254; People v McKnight, 26 NY2d 1034); or the defendant’s personal effects which were within his domin *688 ion at time of arrest (People v Darden, 34 NY2d 177 [attaché case]; People v Weintraub, 35 NY2d 351 [attaché case]; People v Perel, 34 NY2d 462, supra [personal notebook]).
Since Chimel, neither the Supreme Court nor our court has ever sustained a search incident to arrest which extended beyond the area within the defendant’s immediate control. In such a situation it can hardly be said that the arrestee is capable of grabbing a weapon or destroying evidence. As Chief Judge Breitel noted in Perel (supra, p 468) "[A]n arrest of a person will not justify a search of an entire home or other area in which he maintains a reasonable expectation of privacy, the arrest notwithstanding”. Indeed this fundamental principle was reaffirmed by our court just last session. In People v Williams (37 NY2d 206), we declared that the warrantless search of defendant’s living room and bedroom after he had been arrested and handcuffed in the foyer was unconstitutional.[2] (See, also, People v Velez, 43 AD2d 745, 746, where it was held that the police exceeded permissible limits in searching a second room of the apartment at a time when the two occupants were in one room and apparently under the control of five officers.) The mere fact that an arrest has been made may not be used as a pretext for a search beyond the grab area (see United States v Lefkowitz, 285 US 452; Chimel, supra; but see Chimel, supra, at p 780 [White, J., dissenting]). Had defendants been arrested outside the apartment, a search of the bedroom would clearly violate their constitutional rights (Vale v Louisiana, 399 US 30, supra; People v Loria, 10 NY2d 368). Surely, this constitutional protection does not rest on so fortuitous a circumstance as the defendants’ location (Trupiano v United States, 334 US 699, 707, 708).
Applying these principles to the case at bar, the arresting officers were authorized to search the area near the entrance, the area within Clements’ reach, and the bathroom, Metzger’s grab area. Both defendants submitted to arrest without the slightest protest (this is especially unusual as to the one defendant who was interrupted while indisposed in the bathroom). Both were immediately handcuffed and guarded in the living room by the police. By no stretch of the Chimel doctrine could the dresser in the bedroom, which was concededly *689 unoccupied at all times, be searched as incident to arrest (see People v Williams, supra; People v Velez, supra).
Turning to the second apparent basis for the majority’s holding, I find this record devoid of any indication that the contraband was in danger of being destroyed. Although experience teaches of the easy disposability of narcotics, that does not justify making the mere presence of drugs an exigency. It is difficult to conceive of narcotics which may not be readily destroyed. The appropriate solution for this problem is a no-knock search warrant (CPL 690.50),[3] not the course suggested by the majority. Moreover, the mere hearsay statement that the informer was anxious while purchasing the drugs is susceptible of varying interpretations and without something concrete hardly indicative of impending flight or destruction of evidence by the defendants.
The decisional law on this subject accords with this view. People v Torres (45 AD2d 185) is in point. There, the police had been informed that heroin was being sold from defendant’s apartment and would probably be sold out by morning. A subsequent warrantless search and seizure was declared illegal by the Appellate Division which noted the total lack of traffic in or out of the apartment and lack of indication that there was any threat that the narcotics were to be destroyed. (See, also, State v Wiley, 522 SW2d 281 [Mo], where the informer, whose information had been verified to a great degree, told the police that the defendants planned to depart as soon as they finished dinner; Williams v State, 331 A2d 380 [Del], where the police knew a major narcotics purchase was being conducted in a motel and both buyers and sellers would depart after the negotiations were concluded; State v Miller, 528 P2d 1082 [Ore], search upheld where informer, after agreeing with police to buy drugs, emerges from house for more money and a lookout within the house is watching.) Thus, in light of this record, which contains virtually nothing to support a reasonable belief that the defendants or the marijuana were likely to vanish, the instant search is unjustifiable.
Turning to the premise that the police subjectively evaluated the situation and concluded that further police action was imperative, there is nothing to support that conclusion. The police knew that no one else was in the apartment so *690 there was no apparent danger to the drugs in the bedroom. (See, e.g., United States v Rubin, 474 F2d 262, where suspects were inside the building in question, and the police were aware of a specific attempt by someone outside to warn them of their peril. (See, also, Ker v California, 374 US 23, 42, occupant of apartment might distribute or hide drugs; Theobald v United States, 371 F2d 769, people inside the room might destroy the evidence; Dorman v United States, 435 F2d 385, armed fugitive believed to be inside residence; United States v Bradley, 455 F2d 1181, suspects in the midst of a narcotics transaction; United States v Davis, 461 F2d 1026, suspects in dwelling in the midst of cutting heroin preparatory to going out on the street with it; United States v Evans, 481 F2d 990, specific risk that a suspect would get a warning and act to destroy evidence; State v Patterson, 192 Neb 308, suspects inside and attempts to arrest as they left singly could alert those inside.) Vale (supra) is particularly instructive in this regard. There a search of defendant’s house was declared illegal despite the fact that defendant’s mother and brother were on the premises and could have conceivably destroyed or removed evidence. Nor was there anything to indicate the existence of confederates lurking about in order to spirit away the remaining drugs, or that others had been or could be informed of the arrest and act to eliminate the proof (see, e.g.,. Commonwealth v Forde, 329 NE2d 717 [Mass]). Furthermore the evidence was not of such a perishable nature as to necessitate an immediate seizure (e.g., Schmerber v California, 384 US 757). Here, the police were operating on the scantiest of information, the word of a previously unknown 17-year-old informant[4] who they casually met carrying a bucket of paint across Sears’ parking lot. They did nothing to check the ownership of the apartment or ascertain the extent of the operation they were infiltrating despite the fact that it was located in a precinct 15 miles from the one to which they were assigned. It is clear therefore the conduct of the officers can hardly be characterized as reasonable and that the sole factor relied on by the officers, the informer’s expression of anxiety, was insufficient to render police action imperative.
As if sensing the inadequacy of and lack of authority for *691 their primary justifications, the majority supplements their reasoning by resort to the premise that once defendants were arrested, subsequent invasions of privacy are relatively minor when compared to alternative courses of action. Initially, and most significantly, I would note that this reasoning fails to recognize the "high function” played by the search warrant. It is not merely a formality to be dispensed with to accommodate the police (Agnello, 269 US 20, 33, supra; United States v Jeffers, 342 US 48, 51). As noted in Coolidge (403 US 443, 470, supra, ) inconvenience caused by the warrant requirement is not constitutionally cognizable. Rather the Constitution is designed to place the objective evaluation of a neutral Magistrate between the citizenry and the police so as to secure the individual against arbitrary intrusion by the State. Merely precluding the introduction of evidence seized without probable cause will not achieve that objective. (Otherwise, warrants will be necessary only when the police lack probable cause.) Thus if the constitutional guarantee is to have substance, violations must be prevented, not simply redressed (Chimel, 395 US 752, 766, n 12, supra; Coolidge, supra, at pp 450-451). The right against unlawful search and seizure must be protected even though the same result might have been accomplished in a lawful manner (Silverthorne Lbr. Co. v United States, 251 US 385, 392).
Accordingly, where a party’s constitutional rights have been trammelled, mere speculation as to what greater intrusion he was spared will not transform an illegal search and seizure into a legal one. To do so would be the equivalent of saying that a guilty person need not be afforded a fair trial. That is abhorrent to our jurisprudence and something we have never deigned to do (People v Alicea, 37 NY2d 601).
Upon close analysis it is clear that the "greater:lesser” intrusion analysis stems from those cases considering the personal effects of the arrestee and the so-called inventory search cases (see, e.g., United States v Edwards, 415 US 800, supra; People v Perel, 34 NY2d 462, supra; People v Weintraub, 35 NY2d 351, supra; Cardwell v Lewis, 417 US. 583; People v Sullivan, 29 NY2d 69), and only comes into play where the defendant’s expectation of privacy has ceased. Here the defendants retained a reasonable expectation of privacy as to the rear bedroom, so the search of the dresser located in the bedroom was unconstitutional (People v Perel, supra).
I would also note that the cases from outside our jurisdic *692 tion, on which thé majority relies heavily, are of questionable validity as applied to our State’s constitutional protection and are in any event readily distinguishable. United States v Pino (431 F2d 1043, cert den 402 US 989), a pre-Chimel case, involved an arrest effected at 1:00 a.m. in a high-crime area where it would have been dangerous to post a guard. In addition Pino himself told the officers that the drugs were in the bedroom. Clearly the instant case where the arrest occurred in the middle of the afternoon in a garden apartment complex in residential Long Island lacks the sense of urgency present in Pino. Similarly, United States v Lozaw (427 F2d 911), which was also decided before the standard articulated in Chimel was applicable, is distinguishable on its facts by virtue of the fact that there were possible confederates and a statement by one of the arrestees that the narcotics were to be moved later.
I cannot agree that surveillance or placing a guard amounts to a greater intrusion. In United States v Jeffers (342 US 48, supra) a search similar to the one before us was held invalid where the police entered defendant’s premises for the sole purpose of seizing contraband rather than merely placing a guard at the door (but cf. Cady v Dombrowsky, 413 US 433). Nor may the majority take solace as they seem to do, in the fact that the search here was narrow in scope, i.e., limited to the dresser drawer. In the first place, these police did not limit the search to the predetermined target. In addition to searching the bottom drawer of the dresser they searched the top drawer (finding barbiturates which resulted in a separate count) and apparently looked in other areas of the apartment in a vain search for the marked $5 bill which the informer left in the apartment. Secondly, an unconstitutional search no matter how meticulously conducted is unconstitutional nonetheless. Had the police been so meticulous in the performance of their sworn duties, this case never would have arisen. Moreover, the majority erroneously extrapolates the concept of predetermined target which was articulated in a different context in People v Hansen (38 NY2d 17). To justify the search at bar on the ground that it focused on a predetermined target would seem to resurrect the approach rejected by the United States Supreme Court in People v Sibron (18 NY2d 603, revd 392 US 40).
By spelling the demise of Chimel the majority has eliminated a sound rule which was capable of universal under *693 standing; thereby inviting a new era of ad hoc determinations. Even more unfortunate, however, is that the home has been stripped of its once secure position and is now at the mercy of and fair game for governmental intrusion and expediency.
In view of the foregoing I would affirm the order of the Appellate Division.
Chief Judge Breitel and Judges Jasen and Gabrielli concur with Judge Jones; Judge Wachtler dissents and votes to affirm in a separate opinion in which Judges Fuchsberg and Cooke concur.
Order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.

. Throughout the entire majority opinion a paucity of New York cases are cited. Both People v Slaughter (37 NY2d 596) and People v Hendricks (25 NY2d 129), are cited solely for a proposition that is not a subject of controversy in this case. Ironically both Slaughter (supra), and Hendricks (supra), involved searches pursuant to search warrants and dealt only with the sufficiency of the supportive affidavits.
Similarly, People v Montague (19 NY2d 121), another search warrant case, and People v Kreichman (37 NY2d 693) are inapposite because they only considered whether or not probable cause existed. The last case, People v Perel (34 NY2d 462), as I point out in the text, directly supports my analysis that the "greaterdesser” intrusion analysis extends only to the personal effects of the arrestee.

. In its memorandum our court noted (p 208) "Defendant was arrested and handcuffed in the hallway adjoining the door of his apartment, or immediately inside the door in the foyer.”

. (But see US Code, tit 21, § 879, repealed by Public Law No. 93-481.)

. There is nothing in the record to indicate that the police knew where informer lived or whether his identity was verified. Apparently the informer lacked identification thereby making it impossible for the police to establish that he had given them his correct name. Such an informer can hardly be characterized as "available”.