THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLEN EVANS, Appellant.

Fourth Department, April 15, 1976

*Nathaniel A. Barrell (Henrietta Wolfgang* and *Craig Peterson* of counsel), for appellant.

*Edward C. Cosgrove (John DeFranks* of counsel), for respondent.

DILLON, J. Defendant appeals from a judgment convicting him of criminal sale of a dangerous drug in the third degree. He contends that testimony of his possession of three $10 bills was improperly received against him and should have been excluded as being the product of an unconstitutional search. The issue is whether a police officer, in the circumstances here, may testify concerning observations made by him during a warrantless search of the defendant's person made at a time when he had probable cause to seize and search the defendant but where a formal arrest was not made until one month later.

At trial Deputy Sheriff Scirri testified that on October 4, 1974, while he was working as an undercover officer, he had a conversation with defendant about the purchase of heroin. When he asked defendant how much heroin he had, defendant replied "I have as many as you want". The defendant took from his pocket a tinfoil containing bags of heroin, removed two and sold them to Scirri, who paid defendant three $10 bills. The defendant told Scirri that if he wanted more he should return. Scirri forthwith delivered the two bags to his superior, Sergeant Guadagno, who field-tested the bags' content and verified that it was heroin. Scirri gave Guadagno a full description of the defendant and advised him of the details of the purchase. Guadagno immediately went to the vicinity of the alleged sale and confronted the defendant. He frisked the exterior of defendant's clothing and then ordered defendant to empty his pockets on the hood of the police car. Guadagno testified that among the items defendant removed from his pockets were three $10 bills which he did not seize and which had not previously been marked or made identifiable. After a further street detention while Guadagno determined whether there was any outstanding warrant, the defendant was released and was not formally arrested until his indictment one month later. The time lapse between Scirri's

purchase and Guadagno's search was approximately 45 minutes.

It is Guadagno's testimony at trial that the defendant had three $10 bills on his person shortly after the sale to Scirri that is the subject of this appeal. The defendant urges that since the search was not made incidental to and contemporaneous with a lawful arrest, the testimony should have been excluded.

We cannot agree that the circumstances here warrant the application of the exclusionary rule. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The constitutional protection afforded the citizenry does not forbid all searches and seizures but only those which are unreasonable *(Terry v Ohio,* 392 US 1; *Elkins v United States,* 364 US 206). The question presented here, then, is whether in all the circumstances the defendant's "right to personal security was violated by an unreasonable search and seizure" *(Terry v Ohio, supra,* p 9).

The test is one of reasonableness. The exclusionary rule represents a judicial response to unlawful, overbearing and unreasonable police conduct. When the police are found to have engaged in constitutionally proscribed conduct, the court is obligated to withhold judicial approval of that conduct by application of the exclusionary rule. The rule, however, "cannot properly be invoked to exclude the products of legitimate police investigative techniques" *(Terry v Ohio, supra,* p 13).

It cannot be doubted that while Guadagno did not formally arrest the defendant, he restrained his freedom of movement and thus did "seize" him within the meaning of the Fourth Amendment *(Terry v Ohio, supra; Sibron v New York,* 392 US 40; *People v Cantor,* 36 NY2d 106; *People v Earl,* 50 AD2d 289). It is unquestioned that he had probable cause to seize and search the defendant for the possession of narcotics. Had he found narcotics on the defendant's person and formally arrested the defendant for that crime, his conduct would receive judicial approval as reasonable and proper.

In determining the reasonableness of a search or seizure we must weigh "the government's interest in the detection and

apprehension of criminals against the encroachment involved with respect to an individual's right to privacy and personal security * * * In conducting this inquiry we must consider whether or not the action of the police was justified at its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible" *(People v Cantor, supra,* p 111, citing *Terry v Ohio, supra,* p 19; *Cupp v Murphy,* 412 US 291; *People v Kuhn,* 33 NY2d 203).

The government has a deep and abiding interest in the flow of illicit narcotics in this State and nation. There is no greater scourge upon the public, particularly the young, than the insidious cultivation of new disciples to heroin euphoria and the corruption and human misery that are its inevitable result. The use of undercover police, disguised as addicts, has long been recognized as a reasonable, though perilous, method of ferreting out those who sell and distribute this venomous commodity.

The postponement of arrests of sellers of narcotics in order that an undercover policeman may pursue his work to its maximum potential before the revelation of his true identity is an established and legitimate police practice, provided the delay thereby occasioned does not prejudice other constitutional guarantees of the defendant.

Guadagno had a legitimate reason for seizing and searching the defendant, but on failing to find narcotics in his possession he did not formalize an arrest. To have done so would have required him to charge the defendant with the sale of narcotics to his fellow deputy, an act which would have revealed the identity of that deputy as an undercover policeman.

The defendant contends that since the search here cannot be justified as incident to a lawful arrest, testimony as to its fruits must be excluded. We note, however, that the rationale upon which detention searches may constitutionally be permissible recently has been refined *(People v Perel,* 34 NY2d 462) and the rule of reasonableness reaffirmed (cf. *People v Fustanio,* 35 NY2d 196).

"The right to search the person incident to arrest always has been recognized in this country and in England" *(United States v Rabinowitz,* 339 US 56, 60; see, also, *Weeks v United States,* 232 US 383, 392). "The rule allowing contemporaneous searches is justified, for example * * * by the need to prevent the destruction of evidence of the crime * * * which might

easily happen where the * * * evidence is on the accused's person" *(Preston v United States,* 376 US 364, 367).

The dissenting opinion relies upon the language of Justice BLACK in *Preston* (p 367) that the justification for a contemporaneous search is "absent where a search is remote in time or place from the arrest". The circumstances of each case, however, determine the applicability of that language and it is sufficient to note that the facts in *Preston* differ greatly from those at bar. There the court was confronted with justifying a search of an automobile, not a person, several hours after the arrest of the defendants, who were in jailhouse custody.

The broad rules of Fourth Amendment constitutionality to be derived from *Preston* were set forth by Justice BLACK in his dissenting opinion in *Vale v Louisiana* (399 US 30, 36): "A warrant has never been thought to be an absolute requirement for a constitutionally proper search. Searches, whether with or without a warrant, are to be judged by whether they are reasonable, and, as I said, speaking for the Court in *Preston v United States,* 376 U.S. 364, 366-367 (1964), common sense dictates that reasonableness varies with the circumstances of the search."

It is now well settled that a prearrest search of the person will be permitted where subsequent thereto the defendant is arrested, provided that at the time of the search there was probable cause to arrest *(United States v Riggs,* 474 F2d 699; *United States v Skinner,* 412 F2d 98, cert den 396 US 967; *Henderson v United States,* 405 F2d 874, cert den 395 US 906).

The postponement of the intrusion of formal arrest does not remove the justification for the search and "in no way prejudices the individual's Fourth Amendment rights" *(United States v Riggs, supra,* p 704). As Mr. Justice HARLAN wrote in his concurring opinion in *Peters v New York* (decided with *Sibron v New York,* 392 US 40, 77): "If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is *no* case in which a defendant may validly say, 'Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards.' * * * [A]n officer who does have probable cause may of course seize and search immediately. Hence * * * the prosecution must be able to date the arrest as *early*

as it chooses following the development of probable cause." (Emphasis in original.)

The United States Supreme Court addressed itself to the specific issue of the postponement of formal arrest following a search *upon probable cause* in *Cupp v Murphy* (412 US 291). There the defendant's wife was murdered by strangulation. The police, over the objection of the defendant but with reasonable cause, compelled him to submit to a taking of scrapings from his fingernails and thereafter released him. It developed that the fingernail scrapings contained traces of skin, blood cells and fabric from the victim's nightgown. The defendant was not formally arrested until approximately one month later. The court found, firstly, that "[n]evertheless, the detention of the respondent against his will constituted a seizure of his person, and the Fourth Amendment guarantee of freedom from 'unreasonable searches and seizures' is clearly implicated" *(Cupp v Murphy, supra,* p 294). Citing *Davis v Mississippi* (394 US 721, 726, 727), the court noted "[n]othing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrest' or 'investigatory detentions'". The court pointedly stated, in distinguishing its holding from that in *Davis,* where the defendant was also detained in advance of the arrest, that the detention in *Davis* was without probable cause while the detention in *Cupp* was based upon probable cause. Though the court expressly did not hold that a full search of the defendant would be justified in the circumstances, it ruled that where no arrest is made but where probable cause for an arrest exists and where the police have reasonable cause to believe that highly destructible evidence is on the defendant's person, then a limited search to preserve that evidence does not violate the Fourth and Fourteenth Amendments (see concurring opinion of Justice BLACKMUN, *Cupp v Murphy, supra,* p 300).

It follows, then, that the Deputy Sheriff, in this street encounter with the defendant, not only could have formally placed him under arrest but had the additional right, upon probable cause, to conduct a search for narcotics. Not having uncovered narcotics pursuant to his directive to the defendant to empty his pockets but having observed that the defendant had three $10 bills in his possession, he chose not to formally arrest the defendant at that time in keeping with the reasona-

ble police practice in these circumstances of not revealing the identity of an undercover officer until achievement of his maximum potential usefulness. Having made the observation of those bills pursuant to a lawful search, however, the exclusionary rule should not be applied to his testimony in that regard.

This is not to say that the police repeatedly could intrude upon the privacy of the defendant's person between the time of the alleged sale and the date of formal arrest. Such repeated intrusions, absent arrest, would lack essential antecedent probable cause and would be subject to the exclusionary rule as unreasonable.

We also note defendant's other contention that it was error to admit the testimony of Scirri that defendant said at the time of the sale the he "couldn't afford to get busted again because he had just gotten out of jail." The statement was voluntarily made while the defendant was not in custody. It did not require a pretrial hearing as to its admissibility and was not subject to the exclusionary rule. Though there may be a question of its relevance, its admission was nonetheless harmless error (cf. *People v Crimmins,* 36 NY2d 230).

The judgment should be affirmed.

SIMONS, J. (dissenting). I disagree with the majority's holding that a police officer having probable cause to make an arrest may, without more, conduct a warrantless body search of a defendant if his actions are "reasonable". Significantly, even the People do not urge us to accept such a broad rule. The District Attorney contends that this search is valid as a search incident to the arrest of defendant (see *Agnello v United States,* 269 US 20; *Carroll v United States,* 267 US 132; *People v Chiagles,* 237 NY 193). If that is so, the October search must be justified by the arrest of defendant in November.[1]

The general rule is that all warrantless searches are unreasonable unless they are justified under one of the recognized exceptions to the constitutional requirements of the Fourth Amendment *(Katz v United States,* 389 US 347, 357; *People v*

---

1. None of the members of the court accept the People's contention that the momentary detention on the night of October 4 may be considered an arrest which legitimized the search, followed shortly thereafter by defendant's release. Although Sergeant Guadagno had probable cause to make a warrantless arrest at the time (see *Adams v Williams,* 407 US 143, 148-149), he did not claim that he had arrested defendant, and upon the evidence he clearly did not (see CPL 140.15).

*Perel,* 34 NY2d 462, 466; *People v Loria,* 10 NY2d 368). In some limited instances involving exigent circumstances (and none is claimed in this case), probable cause has been held sufficient to justify a warrantless search (see, e.g., *Chambers v Maroney,* 399 US 42; *Warden v Hayden,* 387 US 294, 298-299; *People v Lewis,* 26 NY2d 547) but absent exigent circumstances or a recognized exception to the general rule, probable cause must be determined by a detached, neutral magistrate, not a police officer on the beat *(Terry v Ohio,* 392 US 1, 21; *Johnson v United States,* 333 US 10, 13-14). The question then is whether this search may be justified as one incident to an arrest.

There is respectable authority holding that a search of defendant's person may be incident to an arrest although the arrest is made after the search, rather than before, if at the time of the search there was probable cause to arrest *(United States v Riggs,* 474 F2d 699, 704; *United States v Brown,* 463 F2d 949; *United States v Thomas,* 432 F2d 120, cert den 400 US 1022; *United States v Skinner,* 412 F2d 98, 102-103, cert den 396 US 967; *Henderson v United States,* 405 F2d 874, cert den 395 US 906; and see *Cupp v Murphy,* 412 US 291; cf. *People v Ryan,* 14 AD2d 926).[2] But a warrantless search which is incidental to an arrest, whether made before or after the arrest, must be contemporaneous with it *(Stoner v California,* 376 US 483, 486-487). Where, as here, the two are separated by a lapse of more than a month's time, the search may not be permitted as one incidental to a subsequent arrest.

Incidental searches have been justified in different terms. In *Preston v United States* (376 US 364, 367), Justice BLACK explained the exception thus: "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest." (See, also, *United States v Edwards,*

---

2. For cases involving warrantless searches of *property* before arrest see *People v Brosnan* (32 NY2d 254) in which evidence discovered by the prior search was admitted and *People v Vitagliano* (21 AD2d 677, revd on other grounds 15 NY2d 360 [a search 47 days before the arrest]) in which the search was held unreasonable and the evidence suppressed.

415 US 800, 802-803; *Agnello v United States,* 269 US 20, *supra;* Search and Seizure—Validity, Ann 19 ALR3d 727-734.) In *People v Perel* (34 NY2d 462, 467) Chief Judge BREITEL expressed it another way:

"The reason searches of a person and his immediate effects at a place of detention are permissible lies not in the fiction that they are incident to arrest but because of the maximum intrusion already effected by an arrest and detention pending arraignment * * *[3]

"Given the nature of the gross intrusion by detention of the person it is reasonable to conduct a less intrusive search of his person and the possessions he carried with him." (Footnote not in original; see, also, *People v Troiano,* 35 NY2d 476, 478; *Coolidge v New Hampshire,* 403 US 443, 476-478; *United States v Robinson,* 414 US 218, 235 [REHNQUIST, J.], and 237-238 [concurring opn of POWELL, J.].)

Under the rationale of either *Preston* or *Perel,* the warrant-less search privilege ceases if the person searched is not arrested, for the reasons justifying the warrantless search are wholly dependent upon the arrest. If there is no valid arrest, there can be no valid search without a warrant (see *United States v Robinson, supra,* p 235; *Gustafson v Florida,* 414 US 260, 263-264; *Beck v Ohio,* 379 US 89; *Johnson v United States,* 333 US 10, *supra).* This is so even if the police had probable cause to make the arrest and no matter how "reasonable" their reasons for not doing so may have been, for warrantless searches are per se unreasonable, the good faith of the police notwithstanding *(Beck v Ohio, supra,* pp 96-97; *Johnson v United States, supra,* pp 13-14). Since there was no contemporaneous arrest of the defendant in this case the evidence discovered as a result of Sergeant Guadagno's war-rantless search on the evening of October 4 was not admissi-ble at trial.

Notwithstanding these rules, the majority hold the search was proper because Sergeant Guadagno's actions were reason-able. Certainly his actions were not reasonable within the framework of the "stop and frisk" principle of *Terry v Ohio*

---

**3.** For similar language see *People v Chiagles* (237 NY 193, 197 [CARDOZO, J.]). "The basic principle is this: Search of the person is unlawful when the seizure of the body is a trespass, and the purpose of the search is to discover grounds as yet unknown for arrest or accusation [citations omitted]. Search of the person becomes lawful when grounds for the arrest and accusation have been discovered, *and the law is in the act of subjecting the body of the accused to its physical dominion."* (Emphasis added.)

(392 US 1, *supra)* cited in the majority opinion. A stop and frisk may be a reasonable intrusion on a citizen's personal privacy because it combines the minimum intrusion of a pat down with the maximum justification for the intrusion, i.e., the safety of the police officer because of his reasonable apprehension of danger (see *People v Moore,* 32 NY2d 67; and see *People v Taggart,* 20 NY2d 335). Quite the opposite circumstances existed here. There was the maximum intrusion of a body search without any reasonable belief of harm to the police officer because this defendant was suspected only of possessing dangerous drugs, a nonviolent crime, and because Sergeant Guadagno had already completed a "quick frisk" without discovering weapons.

Nor does the necessity to protect Scirri's identity justify Guadagno's actions. The only governmental interest to be protected in this case was the continuing general responsibility of the police to prevent crime and to conceal the identity of an undercover agent involved in that job. That interest was fully protected without the warrantless search.

Of course some may easily accept the decision here, comfortable in the knowledge that the sergeant had good reason to believe defendant had committed a crime and recognizing the obvious desirability of protecting the identity of an undercover agent. But those circumstances should not obscure the result. Manifestly this search was exploratory in nature and unredeemed by any exception to the requirements of the Fourth Amendment. This ruling says that a police officer in the field may determine what does and what does not constitute probable cause and not only may he make this determination once, but presumably several times, for the converse of the majority's statement on serial searches would be that "repeated intrusions, absent arrest" would be permissible if the police officer determined on each occasion that he possessed "essential antecedent probable cause". This flies in the face of the firmly established rule that except in limited cases a neutral Magistrate, not a police officer, must determine probable cause *(Coolidge v New Hampshire,* 403 US 443, 449, *supra; Katz v United States,* 389 US 347, 356-357, *supra; Johnson v United States,* 333 US 10, 13-14, *supra).* Even the circumstances that Sergeant Guadagno had knowledge of facts which were sufficient to obtain a search warrant would not justify his warrantless search *(Johnson v. United States, supra,* pp 13-14).

The only purpose of Guadagno's action was general investi-

gation. The sergeant was looking for evidence, not evidence to prove the sale to Scirri, a crime for which he already had probable cause to arrest defendant, but evidence separate and apart from that sale which might justify defendant's arrest without implicating Scirri. If he had found the additional evidence on the night of October 4, undoubtedly he would have arrested defendant. Not finding it, he let him go. If these circumstances justified the body search of defendant's person, then no constitutional reason appears why they would not serve a similar purpose for repeated warrantless searches, if the police so choose, until incriminating evidence of a separate crime was finally discovered.

The authority of the police to make personal searches incident to an arrest has recently been considered by the courts in connection with traffic arrests (see *United States v Robinson,* 414 US 218, *supra; Gustafson v Florida,* 414 US 260, *supra;* and see *People v Adams,* 32 NY2d 451; *People v Marsh,* 20 NY2d 98). In *Robinson* and *Gustafson* the Supreme Court held that such searches incidental to custodial traffic arrests are per se reasonable although the nature of the offenses does not suggest imminent danger to the arresting officer or the presence of evidence subject to destruction.

It is worth noting by way of analogy, that for many traffic offenses police officers are authorized to arrest or, alternatively, to issue a summons to appear. The violation may be handled either way, in the arresting officer's discretion. If the exercise of that discretion results in the issuance of a summons, I take it no one would argue that the officer nevertheless was entitled to make a full body search merely because he had the power to arrest which he declined to exercise. Similarly in this case while Sergeant Guadagno may have had the authority to arrest defendant, in which case his search would have been permissible, having chosen not to do so, for whatever reason, he could not then proceed to make a warrantless search.

A few observations are in order with respect to other contentions raised by the majority opinion. I do not read Justice HARLAN's concurring statement in *Peters v New York* (392 US 40) as approving a search under the circumstances of this case. If it did, it was dicta for the search in *Peters* was contemporaneous with the arrest of defendant and was limited in scope (p 77). The Justice's statement referred only to the fact that there was some confusion as to whether probable cause existed before Peters' arrest and independent of the

search of his clothes (see *Johnson v United States,* 333 US 10, *supra).* Neither does *Cupp v Murphy* (412 US 291) support the majority decision for in that case the Supreme Court expressly stated that a full search of the defendant, such as exists here, was impermissible without a formal arrest (p 296). The court's decision approving the search in *Cupp* was predicated upon "the very limited search" undertaken incident to a station house detention to preserve this "highly evanescent" evidence (p 296). It was the "extremely narrow scope" and the reasonable necessity for the search that justified the police in proceeding without a warrant (p 299 [concurring opn. of MARSHALL, J.]).

The three $10 bills observed by Sergeant Guadagno could not have been received in evidence because they were discovered as the result of an unreasonable search. Since the bills themselves were inadmissible, the oral testimony of their discovery is similarly barred and defendant's objection to the testimony should have been sustained *(People v O'Neill,* 11 NY2d 148, 154; *Williams v United States,* 263 F2d 487, 489; and see *People v. Laverne,* 14 NY2d 304, 310).

Constitutional considerations aside, one might doubt the probative value of Sergeant Guadagno's testimony relating to the money,[4] but in view of the fact that it corroborated the testimony of the People's only witness to the criminal transaction, we cannot say it was harmless beyond a reasonable doubt *(Chapman v California,* 386 US 18; *People v Crimmins,* 36 NY2d 230).

The judgment should be reversed and a new trial granted.

MARSH, P. J., and WITMER, J., concur with DILLON, J.; SIMONS and GOLDMAN, JJ., dissent and vote to reverse judgment and grant a new trial, in an opinion by SIMONS, J.

Judgment affirmed.

4. Sergeant Guadagno stated that he did not seize the three $10 bills because he had no way of connecting them to the sale.