*690 OPINION OF THE COURT
Joel L. Blumenfeld, J.
The defendant moves to suppress a pair of wire pliers recovered from his person and statements. On August 5, 1999, a suppression hearing was held before this court. At this hearing, Police Officer James Pelosi testified for the People. No one else testified. I find the officer’s testimony credible and based on that testimony, this court makes the following findings of fact and conclusions of law.
On January 12, 1999, at around 1:00 a.m., Police Officer James Pelosi was patrolling in an unmarked car with Sergeant George Norris as a part of the Street Narcotics Enforcement Unit. They were both in plainclothes.
At the intersection of Merrick and Linden Boulevards, Pelosi saw a blue Honda stopped at the light directly opposite his car. Inside he saw two passengers and the defendant, who was operating the car which did not have its headlights on. When the traffic light changed, the officer and his sergeant followed the Honda for an eighth of a mile. The police then put on their siren and emergency lights, which in this unmarked car consisted of the headlights alternating back and forth from normal to bright. At that point the Honda accelerated at a high rate of speed (between 30 to 70 miles per hour). The Honda turned left onto Murdock Avenue and was pursued for three to five minutes. The officer stated that during that time, the defendant was driving in an erratic manner taking sharp turns and accelerating quickly. The defendant lost control and struck a curb causing a flat tire. The police car pulled along side and blocked the Honda’s driver’s side door. The defendant and his two occupants exited the Honda on the passenger side and fled. Pelosi pursued the defendant for about one minute while Norris notified the Aviation Unit. During the pursuit, Pelosi shouted demands that the defendant stop. When the defendant was caught two blocks later he was never asked for license and registration, but he asked why he was being arrested. At that point the officer read the defendant his Miranda warnings, handcuffed the defendant and searched him. Pelosi stated that “after placing Mr. Henry under arrest and searching him for my safety, I recovered a pair of wire pliers from his right front jacket pocket” (transcript, at 14).
The defendant stated that he understood them and again asked why he was being arrested. Pelosi told the defendant that he was being arrested for driving a stolen vehicle, even *691 though at that point Pelosi only knew that the defendant was speeding and was driving without headlights and recklessly. He had not yet determined that the vehicle was stolen.
The defendant stated he had been picked up on Jamaica Avenue by “Calves” and “Legs” and they were just driving around.
When Pelosi took the defendant back to the vehicle, he observed that the vehicle’s passenger side door handles were jarred, the glove compartment was broken and held in place by a string, that the ignition was removed from the column and that a screwdriver was inserted in its place.
The defendant is indicted for driving a vehicle at night without displaying lighted headlights (Vehicle and Traffic Law § 375 [2] [a] [1]) and reckless driving (Vehicle and Traffic Law § 1212) and, along with his codefendant Alvin Shelton, with the possession of the stolen blue Honda (Penal Law §§ 165.50, 165.45 [5]), unauthorized use of that vehicle (Penal Law § 165.05 [1]) and possession of burglar’s tools including the subject wire cutters as well as a screwdriver, mace, “maeguar” and socket, penlight and gloves (Penal Law § 140.35).
Even though the officer’s articulated reason for arresting the defendant was for possessing a stolen car, he had no knowledge that the car was stolen at the time of the arrest. The validity of the arrest and search in this case depends on the scope of the officer’s authority when arresting the defendant for violations of the Vehicle and Traffic Law.
It is well settled that a police officer may lawfully stop a car where that officer has reasonable cause to believe that the driver violated the Vehicle and Traffic Law (Pennsylvania v Mimms, 434 US 106, 109; People v Ellis, 62 NY2d 393, 396; People v Ingle, 36 NY2d 413, 419). At the end of the hearing, it became clear that the issue was not at all about the stop and the seizure of the defendant for the traffic violations but rather whether Pelosi was authorized to search the defendant and recover the wire pliers from his jacket. Since the defendant was properly stopped and given his Miranda warnings, his voluntary statement can be admitted into evidence at trial and, accordingly, the motion to suppress the statements is denied.
In 1967, the Court of Appeals distinguished arrests for crimes from arrests for traffic offenses. The Court held that “the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty *692 of a crime rather than merely a simple traffic infraction” (People v Marsh, 20 NY2d 98, 101). The Marsh Court refused to establish a uniform rule governing all searches accompanying valid arrests, but rather examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted.
As Marsh (supra) dealt with a traffic infraction, it was not until 1973 that the Court of Appeals was confronted with a search of a defendant for a misdemeanor in the Vehicle and Traffic Law in People v Adams (32 NY2d 451). The defendant was subjected to a search of his person incident to an arrest for a violation of Vehicle and Traffic Law former § 422.[1] The Court held that notwithstanding that the arrest was for a misdemeanor, as opposed to an infraction, that the search incident to an arrest exception would not sustain the search for this type of traffic misdemeanor (supra, at 455). Thus, the Court, in erasing that line, eliminated the distinction between the traffic infraction and the misdemeanor traffic violation that existed in People v Marsh (supra; see, People v Adams, supra, at 456 [Jasen, J., dissenting opn]).
At the end of 1973, the United States Supreme Court held that the Fourth Amendment to the US Constitution allowed for searches incident to arrest where the arrest is for a traffic violation (United States v Robinson, 414 US 218). Our Court of Appeals the following year reaffirmed Marsh and Adams (supra) and made it clear that although their underlying rationale relied, in part, on the Fourth Amendment, that “it was primarily an expression of State policy found in the State Constitution and the legislative intent underlying the arrest provisions of the Vehicle and Traffic Law” (People v Weintraub, 35 NY2d 351, 355 [Wachtler, J., concurring opn]).
Also in 1974, the Court of Appeals addressed the issue of “whether, and to what extent, a search of the person is authorized as incident to a custodial detention for a misdemeanor traffic violation” (People v Troiano, 35 NY2d 476, 477). In Troiano, the defendant was arrested pursuant to a warrant for the traffic misdemeanor of driving while license was suspended or *693 revoked (Vehicle and Traffic Law § 511) and was being taken into custody. The arresting officer frisked the defendant and discovered a “hard object” in his waistband. This object turned out to be a loaded revolver, which was confiscated. The Court found the search to be legal since the defendant was being taken into custody: “so long as an arrest is lawful, the consequent exposure to search is inevitable. If the unnecessarily intrusive personal search is to be restricted, the cure must be by limiting the right to arrest or to take into custody. No other practical or theoretical limitation seems acceptable if the life and limb of the police officer or the person arrested is to be safeguarded (see A. L. L, Model Code of Pre-Arraignment Procedure, § SS230.2, including note and commentary at pp. 184-185).” (People v Troiano, supra, at 478; see also, People v Perel, 34 NY2d 462.) However, the Court did not abandon People v Marsh (supra) and People v Adams (supra). “There is, perhaps, an area of traffic violation ‘arrest’ where a full-blown search is not justified, but it might seem to be confined to a situation where an arrest was not necessary because an alternative summons was available or because the arrest was a suspect pretext (cf. People v. Marsh, 20 NY2d 98; People v. Adams, 32 NY2d 451, 455, and dissenting opn. at pp. 456-457; but see A. L. I., Model Code of Pre-Arraignment Procedure [O. D. No. 1, 1972], § SS230.2, including, however, the accompanying note).” (People v Troiano, supra, at 478.)
In 1976, the Court of Appeals, relying on Troiano (supra), found a search conducted incident to an arrest for a violation of Vehicle and Traffic Law § 509 (driving without a license) was justified where the defendant could not produce any identification. “Without the available data on which to prepare a uniform traffic summons and confronted with the driver of a weaving car who possessed no operator’s license, we can only conclude that this arrest was warranted and that the search of defendant’s person incident thereto was surely lawful (cf. People v Troiano, 35 NY2d 476)” (People v Copeland, 39 NY2d 986, 986-987).
Then, in 1980, the Court of Appeals, relying on People v Troiano (supra), found a Vehicle and Traffic Law misdemeanor arrest in which “ ‘a full blown search [was] not justified’ ” (People v Howell, 49 NY2d 778, 779). In Howell, the defendant was driving in a manner the police thought was erratic. The police approached the defendant with their guns drawn and frisked the defendant. The Court of Appeals stated that the hearing court was “in error in its conclusion that merely *694 because reckless driving is a misdemeanor rather than a traffic violation, the arrest was inevitable” (People v Howell, supra, at 779). Again, the Court, quoting People v Troiano (supra), stated “ ‘[t]here is, perhaps, an area of traffic violation “arrest” where a full-blown search is not justified, but it might seem to be confined to a situation where an arrest was not necessary because an alternative summons was available or because the arrest was a suspect pretext’ ” (People v Howell, supra, at 779).
Thus, the current state of New York State constitutional law appears to be stated in People v Troiano (supra). The general rule is that in traffic violation arrests the search incident to a lawful arrest exception cannot be used to justify a frisk: where the conclusion that the defendant may be armed cannot be justified; where there is an alternative to custodial arrest such as a summons; or “because the arrest was a suspect pretext” (People v Troiano, supra, at 478).[2]
In order to resolve the search issue in this case, we must examine whether any of the Troiano exceptions apply.
In the instant case, as it relates to the first Troiano exception, Pelosi did not — nor was he asked to — explain why he feared for his safety or if, and why, he believed the defendant was armed (see, People v Howell, supra). All the officer stated was that he searched him for the officer’s safety. The Court of Appeals found this not to be enough. During the suppression hearing in Howell, the officer testified that the “search was conducted on his belief that the defendant might be armed; however, there is no testimony or finding as to what circumstances led the police officer to that conclusion” (People v Howell, supra, at 779).
Just as the People made no record to support the officer’s belief that the defendant was armed or that he feared for his safety, the defendant made no argument that “the arrest was a suspect pretext.” It is interesting to note that Pelosi was working as an undercover narcotics officer in an unmarked car. He simply saw a car without its lights on at nighttime. He could have simply signaled the driver to turn on his lights or radioed the uniformed police force in a marked car to follow and issue a summons to the defendant for this traffic violation. Pelosi never charged the defendant at the precinct or on the criminal court felony complaint with a traffic violation. It was not until *695 the indictment that these charges appeared. However, as the defendant does not challenge Pelosi’s assertions that the lights were off and that the car was speeding and was being driven recklessly, and does not argue that “the arrest was a suspect pretext” then under Whren v United States (517 US 806) suppression cannot be granted on this ground.
As to whether there was any alternative to custodial arrest such as a summons, the facts are as follows. The officer first had to chase by vehicle the defendant in another vehicle who was clearly fleeing. Once the car that the defendant was in came to a stop, the officer had to chase the defendant by foot until he was able to stop him. Once he was able to stop the defendant he never explored any alternative to arrest by asking for the defendant’s license, registration or any form of identification. At that moment when the officer was arresting, reading the Miranda warnings and searching the defendant, the only offenses that the officer had reasonable cause to believe had been committed were driving without lighted headlights and reckless driving. These offenses were completed and on the surface it would appear that this court should apply the standard in Adams and Troiano (supra). In Adams, the Court held that where the defendant was able to produce his license and registration, and in the absence of the defendant’s inability to explain satisfactorily or answer any questions concerning the traffic offense, it was unreasonable to assume that the search of the defendant was properly a search incident to an arrest {People v Adams, 32 NY2d 451, 455, supra). Again, in the instant case, the officer never allowed for the exploration of alternatives to custodial arrest by asking for identification. This is the defendant’s best and only argument for suppression.
However, all the Court of Appeals decisions mentioned above make no mention of a chase being involved — a situation where the defendant is clearly showing his desire to escape from the police and avoid prosecution.
While it is clear that Pelosi had discretion to issue a summons under Vehicle and Traffic Law § 207 or an appearance ticket under CPL article 150, it is also clear that under these particular facts, to do so would be an abuse of his discretion. To issue a piece of paper telling the defendant when to appear on his own in court when that defendant has just twice tried to escape the officer’s capture would be unreasonable.
Further, article I, § 12 of the New York Constitution protects the defendant from unreasonable searches and seizures. Under *696 these circumstances — the officer having to chase a vehicle that did not have its headlights on, and then the driver by foot who was clearly trying to escape apprehension — issuing a summons would not have been a reasonable alternative to custodial arrest.
Accordingly, this court finds that the officer was justified in arresting the defendant for reckless driving and that because of the chase by vehicle and then by foot had no alternative but to place the defendant in custody. Therefore, the custodial arrest was justified and the seizure of the wire pliers is permissible (People v Perel, 34 NY2d 462, supra).
The court notes that once the defendant was brought back to the car and Pelosi learned that the car was stolen, he clearly would have had a right to arrest and search the defendant. However, the inevitable discovery doctrine would have been of no help to the People. In applying the inevitable discovery exception, the Court of Appeals requires the People to demonstrate a “very high degree of probability” that normal police procedures would have uncovered the challenged evidence “independently of the tainted source” (People v Payton, 45 NY2d 300, 313, revd on other grounds 445 US 573, on remand 51 NY2d 169). Under New York Constitution, article I, § 12, primary evidence, that is, the “very evidence * * * obtained during or as the immediate consequence” of the illegal conduct, would still be subject to exclusion even if it would most likely have been discovered in the course of routine police procedures (People v Stith, 69 NY2d 313, 318, 316, n). Since the subject pliers are the primary fruit of the allegedly illegal search, its taint could not be purged under the State’s limited inevitable discovery exception.
Finally, the court notes that even if this court had suppressed the physical evidence that it would have made no difference in this case whatsoever. The suppression of the pliers, one of many burglar’s tools in the indictment, would not have required the dismissal of that count. Furthermore, since the pliers were in the defendant’s pocket and played no part in the operation of the motor vehicle, it is not clear how it is a burglar’s tool on the facts of this case.
Accordingly, the arrest and search were proper and the defendant’s statement was voluntary after being advised of his Miranda warnings. The motion to suppress the physical evidence and statements is denied.

. Vehicle and Traffic Law former § 422 in pertinent part provided that “[a]ny person having possession for more than thirty days of a motor vehicle * ** * the identification number of which has been destroyed, removed, [or] defaced * * * without having made application to the commissioner for permission to make or stamp on a new number * * * shall be guilty of a misdemeanor, and punishable by a fine of not less than twenty-five dollars nor more than fifty dollars.”

. It should be noted that under Federal constitutional law, this search would be valid and proper as incident to an arrest even though for a traffic violation (see, e.g., United States v Robinson, 414 US 218, supra).