Chief Judge Breitel.
Defendants, following denial of a motion to suppress evidence, were convicted, after guilty pleas, of criminal possession of a weapon and of dangerous drugs. Defendant Gleeson was sentenced to four years’ imprisonment on each charge. Defendant Senuta received a one-year sentence on each charge. Defendants appealed and the Appellate Division affirmed.
The issue is whether information obtained as a result of a trespass by the Sheriff may be used to justify a warrantless stop and search of an automobile and a seizure of incriminating evidence from the vehicle.
There should be a reversal. Information obtained as a result of a trespass by police may not be used to justify a warrant- *464 less stop and search of an automobile and a seizure of incriminating evidence from the vehicle.
During the summer of 1972, John Clarke and his family resided in a summer cabin in a remote, sparsely settled section of the Town of Greig, in Lewis County. Located on adjoining property, approximately 200 feet from the Clarke cabin, was a small cabin known to Clarke as the "Gleeson camp”. The Gleeson cabin was believed by Clarke to be uninhabited.
On July 11, 1972, Clarke and a friend, Jack Dwyer, heard an automobile pull up in the Gleeson driveway. They then saw defendants walking to the side of the cabin. They did not go inside, but stood near the side of the building for three or four minutes, one bending or squatting down. Defendants then left in the automobile.
Their suspicions aroused because of camp burglaries in the area, Clarke and Dwyer decided to investigate. The two men went over to the Gleeson property and saw a portable ice chest or refrigerator in the crawl space underneath the cabin. The chest was removed and opened; inside was found a pistol, a box of ammunition, drug-use paraphernalia, a paper bag, and a military-type canvas bag. Without further examination, the men replaced the items in the chest and returned it to its position underneath the cabin.
Clarke and Dwyer reported the incident to Lewis County Deputy Sheriff Joseph Levesque, who, without a search warrant, went with the two men to the Gleeson cabin. Deputy Levesque opened the ice chest and made a cursory inspection of its contents. Later that evening, the deputy, still without a search warrant, retrieved the chest and took it to the Sheriff’s office, where he and another deputy opened the chest and inventoried the contents. The deputies found a revolver, another pistol, a box of ammunition, drug-use paraphernalia, a paper bag containing five pounds of marijuana seeds, and a canvas bag containing additional drug paraphernalia. After the inventory, the chest and its contents, minus the ammunition, were put back underneath the Gleeson cabin. A 24-hour surveillance of the cabin was instituted by deputies stationed in a.trailer on the Clarke property. In order to improve the line of vision between the trailer and the Gleeson cabin, some brush was cut on both sides of the informal boundary between the Gleeson and Clarke properties.
*465 About a month later, on August 9, 1972, Deputy Cratsenberg, who was on duty in the trailer, observed defendants return to the cabin. They bent over at the side of the cabin, perhaps to retrieve the ice chest, and then went into the building. A few minutes later defendants came out of the cabin carrying the canvas bag and two metal canisters. They departed in a black Ford station wagon, traveling at a high rate of speed.
After reporting what he had seen, Deputy Cratsenberg followed and stopped defendants’ automobile. The deputy asked the driver, defendant Gleeson, for his operator’s license, which Gleeson produced. The passenger in the station wagon was defendant Senuta. Deputy Cratsenberg informed Gleeson that he was operating the vehicle with a broken tail light and was driving at a speed not reasonable and prudent; but no arrests were made, nor was a summons issued. Defendants were allowed to continue.
Deputy Cratsenberg returned to the Gleeson premises to check the ice chest, and, upon arriving at the cabin, somehow observed in the interior that the ice chest was empty. The deputy relayed this information by radio. Shortly, defendants were stopped on the road in their automobile and arrested for possession of a dangerous drug. The vehicle was searched and the police discovered and seized the two metal canisters containing marijuana seeds, the drug paraphernalia, and the two weapons. Just before the search, the police produced a warrant purportedly authorizing a search of defendants, their cabin and their automobile. The warrant, issued the previous day by a Town Justice, was subsequently held invalid by the court prior to the taking of testimony at the suppression hearing.
Defendants moved to suppress the evidence taken from the vehicle on the ground that it was seized in violation of law. The motion was denied.
An unauthorized search and seizure by a private person does not violate constitutional limitations (US Const., 4th Amdt.; NY Const. art I, § 12). These constitutional proscriptions are directed only at governmental, and not private, activity (see Burdeau v McDowell, 256 US 465, 475; People v Horman, 22 NY2d 378, 381, cert den 393 US 1057; Sackler v Sackler, 15 NY2d 40, 43). Thus, Clarke’s initial independent entry on the Gleeson property and his inspection of the ice chest and its contents would not preclude an otherwise valid *466 later search and seizure by police based upon information discovered as a result of the neighbor’s incursion.
The deputies, however, illegally extended their activity, albeit based on information reported to them by Clarke. Deputy Levesque entered upon the Gleeson property and searched the ice chest. Later that evening, he returned to the Gleeson cabin, removed the chest and brought it to the Sheriffs office for inspection and inventory of its contents. In neither instance did he have a search warrant. No exigent circumstances were present to justify the deputy’s action (see, e.g., McDonald v United States, 335 US 451, 455-456; People v Spinelli, 35 NY2d 77, 81-82; People v Singleteary, 35 NY2d 528, 530). Hence, as the Appellate Division correctly determined, the warrantless search and seizure on the evening of July 11,1972 violated constitutional limitations.
Eliminating the antecedent illegalities of search and seizure, the Appellate Division relied upon two factors to uphold the stop and search of defendants’ vehicle on August 9, namely, the earlier information supplied by civilian Clarke, coupled with the observation of defendants’ activities made by Deputy Cratsenberg from the trailer (44 AD2d, at p 258). Taken together, and even assuming the propriety of the deputy’s observations, these two factors, without more, would be insufficient to justify the stop and search of defendants’ automobile.
Clarke’s initial search of the chest on July 11 revealed, in addition to a pistol and other contraband, a canvas bag. Clarke did not open the bag to examine its contents, if any. All that Deputy Cratsenberg knew from his observations from the trailer one month later, on August 9, was that defendants had gone to the side of the cabin where the ice chest had been replaced, had bent over, and then had entered the cabin. Shortly defendants had departed, carrying a canvas bag and two metal canisters.
It is apparent then, that Deputy Cratsenberg’s later observation that the ice chest was empty, made on his last return to the Gleeson property and while upon it, provided the crucial link for the deputies, before they were ready to conclude that there was probable cause to stop and search defendants’ automobile. Without this information, obtained by an illegal police trespass, the deputies had insufficient basis to believe that defendants now possessed dangerous drugs in the vehicle.
*467 In summary, eliminating all the illegal police searches and trespasses between Clarke’s initial intrusion and limited discovery of the contents of the ice chest, and the observation of defendants on their second visit to the cabin, there was nothing to show what objects, if any, they had recovered from the ice chest or the cabin, and that there was any contraband in the automobile. The only exception is the canvas bag, a bag seen to have been removed from the cabin by defendants on the second visit to the Gleeson cabin, the contents of which hád never been discovered by Clarke.
The contraband and other items seized should have been suppressed as derivative evidence obtained by an illegal search (see Wong Sun v United States, 371 US 471; People v Ingle, 36 NY2d 413; People v Cantor, 36 NY2d 106).
Accordingly, the orders of the Appellate Division should be reversed, the convictions vacated, the evidence suppressed, and the indictments dismissed.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Orders reversed, etc.