THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERT J. DOERBECKER, Appellant.

Second Department, May 19, 1975

*Marvin H. Wolf* for appellant.

*Denis Dillon, District Attorney (Alan L. Honorof* of counsel), for respondent.

SHAPIRO, J. The issue on this appeal is the propriety of certain seizures made by the police in Levittown and Roosevelt, New York. After his motion to suppress those seizures was denied, the defendant pled guilty to the crime of possession of a weapon as a misdemeanor and he now raises the validity of the denial of his motion. We affirm the judgment of conviction.

### THE FACTS

On March 8, 1971 the police of Nassau County received a nationwide teletype report on the police teletype that the Hell's Angels and the Breed motorcycle gangs were having a feud and that both groups were armed and heading for

Nassau County. Four days later a second nationwide teletype was received from the Suffolk County Police Department that the two gangs were armed with dynamite and bombs and that they were going to engage in an armed feud.

Apparently as a result of these teletype communications the Nassau County police began an investigation.[1] On April 9, 1971 Sergeant Kittredge stopped an automobile bearing New Jersey license plates in which there were four members of the Breed gang. Upon searching them and the automobile, two fully loaded sawed-off shotguns and three sticks of dynamite with a fuse attached were found. The car and its passengers were apparently on their way to attend a fund-raising party for the Breed gang at its clubhouse in Roosevelt, Long Island.

As a result of the information received concerning the proposed party, the Crime Prevention Unit (CPU) of the Nassau County police was alerted and they staked out the location of the clubhouse. On that day, April 9, and prior to 6:30 A.M. the next morning, when the defendant was arrested in his home, the CPU made numerous arrests of Breed members, in the vicinity of the clubhouse, and recovered a number of handguns. Before going to the clubhouse and about 5 A.M. Sergeant Kittredge, in company with other police, stopped an automobile in which the defendant was a passenger. The car was searched and a Breed motorcycle jacket belonging to the defendant was found therein and the search of the defendant revealed a 35 millimeter film can containing a green, parsley-like substance. No action was taken by the police at that time and the occupants of the automobile were permitted to go on their way.

From the evening of April 9 and into the morning of April 10, 1971 Police Officer Schuessler was assigned to the Roose-

---

1. In this connection the statement of Judge JASEN for a unanimous court in *People v Lypka* (36 NY2d 210) is clearly pertinent. He said (p 213): "Preliminarily, we think that the police response to the telephone and teletype communications from the Pennsylvania authorities was reasonable and proper. A police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability. *(Whitely v Warden,* 401 US 560, 568; *People v Horowitz,* 21 NY2d 55, 60.)* It follows that where the bulletin or alert, prima facie, furnishes probable cause, a reasonable search is permissible. In such circumstances the sender's knowledge is imputed to the receiver and, when the receiver acts, he presumptively possesses the requisite probable cause to search." The defendant in this case made no claim at the suppression hearing that the information thus obtained was not in fact accurate.

velt area to assist other police units in the vicinity of the Breed clubhouse. He was advised of the impending battle between the Hell's Angels and the Breed gangs and that members of both gangs would most likely be carrying dangerous weapons. However, the place of the impending battle was unknown to the police. On April 10, Schuessler, with the aid of binoculars, kept the premises under observation. About 4:30 A.M. he saw the defendant in a small group milling around in front of the clubhouse. Thereafter the defendant and two others went behind a garage which was not attached to the clubhouse and placed a small package with red and blue markings on it on the ground. They then covered the package with some leaves, after which they left on two motorcycles.

The deposit made by the defendant was kept under constant surveillance for a period of 20 minutes until the police moved in on the premises. When that happened some of the police officers went directly to the place where the defendant had deposited the package, picked it up and opened it. In the package there was a film can containing four Seconal pills and three handguns, two of which were loaded. Schuessler, who had been observing the premises from approximately 3:15 A.M., during that period also transmitted information to other police officers with respect to those leaving the clubhouse. Some of them, based on the information supplied by him, were subsequently picked up with weapons in their possession. During the time that Schuessler was making his observations and before he retrieved the red and blue container, he was informed that some members of the gang in possession of weapons and dynamite had been arrested.

After the package was recovered and its contents inventoried, Schuessler, Kittredge and other police officers went to the home of the defendant in Levittown, knocked on his door and, according to them, were invited in by the defendant. He was then placed under arrest by Schuessler for possession of the weapons which Schuessler had seen him deposit in the yard adjacent to the garage. When the defendant, who was not fully attired at the time, asked for permission to get dressed, he was escorted to his bedroom by the police and they there found a fully-loaded M-1 carbine containing 60 rounds of ammunition and a blackjack hanging by a strap on the doorhandle.

## THE DENIAL OF THE DEFENDANT'S MOTION TO SUPPRESS

The defendant's motion to suppress the articles found in the yard was predicated on the contention "that when Patrolman Schuessler, without a warrant and without defendant's consent trespassed onto defendant's land and dug up a package deposited some 20 minutes before he was acting in derogation of defendant's constitutional rights" and that there were no exigent circumstances warranting the seizure without a warrant. We reject both contentions, holding that the seizure was proper, because (1) the contraband was not in an area protected by the Fourth Amendment and (2) its seizure was justified by the exigencies of the situation. In this connection it should be remembered that the police who effected the seizure were aware that the two motorcycle gangs were preparing for armed battle, that members of the Breed gang were in possession of various guns and explosives and that to have seized the defendant at the time he deposited his package on the ground might well have compromised the surveillance and raised the distinct possibility of an armed battle between police and gang members.

### THE FOURTH AMENDMENT CONTENTION

Under the factual pattern here present, the defendant's contention that the police invaded his right of privacy by going into the yard and thereby unlawfully trespassed on the "curtilage" of the house in violation of his Fourth Amendment rights must be denied acceptance.

Recent decisions, rather than applying common-law trespass definitions, have indicated that the question of invasion of a "curtilage" should turn upon the degree of privacy sought to be protected by the resident *(Wattenburg v United States,* 388 F2d 853). In line with that concept the court in *People v Maltz* (14 Cal App 3d 381, 394–395) said: "In recognition of the proposition that the Fourth Amendment protects persons rather than places (Katz v United States, 389 US 347, 351 * * *), and, perhaps, in recognition of the principle that the conflicting policy considerations involved in Fourth Amendment problems are not to be resolved by reference to technical rules of property (cf. Jones v United States, 362 US 257, 266 * * * Mancusi v DeForte, 392 US 364, 368 * * *), the more recent cases de-emphasize the question of trespass and attempt to resolve the reasonableness of the search by asking

'whether the person [the accused] has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrustion.' * * * The more recent approach is the more sound. *It permits a consideration of the conflicting fundamental policy considerations and relegates the question of trespass to its proper place, that is, the question whether there has been an unreasonable governmental intrustion"* (emphasis supplied).

A case very much in point is *United States v Vilhotti* (323 F Supp 425).[2] There an F.B.I. agent had received information that defendant Vilhotti was using a garage for storing stolen goods. The agent ascertained that Vilhotti had been previously convicted for possession of stolen property. He then went to Vilhotti's premises and, entering a service alley which abutted the garage, beamed his flashlight through a space in the boards covering the area window and there saw the contraband. In denying the defendants' motion to suppress the stolen goods, the court said (pp 431–432): "Thus to ascertain what constitutes an unreasonable search the court must evaluate a person's efforts to insure the privacy of an area or activity in view of both contemporary norms of social conduct and the imperatives of a viable democratic society. * * * Here, given that an unattached garage was the object of search, neither social nor physical barriers were sufficient to protect its interior from intrusion by a casual observer. Kelly's [the agent's] flashlight search, therefore, did not encroach upon defendants' reasonable expectations of privacy" (bracketed matter supplied).

In this case, the package in question was deposited under some leaves at the rear of a garage which was unattached to the motorcycle gang's clubhouse. The clubhouse was not the defendant's place of residence; nor did he individually have any proprietary interest therein. Furthermore, there is no indication that privacy was sought by fencing off or otherwise enclosing the area in question. Under these circumstances, and dealing with the solid facts in possession of the police, to erect the bar of "curtilage" to invalidate the seizure of the package would indeed permit a legal fiction to override common sense. We conclude, therefore, in reconciling "the dichotomy between efficient law enforcement and individual rights"

---

**2.** This citation is to the decision on a motion to suppress. The defendant's subsequent conviction was affirmed on appeal *(United States v Vilhotti,* 452 F2d 1186, cert den 406 US 947).

(WACHTLER, J., in *People v Hanlon,* 36 NY2d 549), that the place from which the seizure was made did not fall within the protection of the Fourth Amendment and that, considering the totality of the facts known to the police, there was more than probable cause to believe that the deposited package contained contraband.

### EXIGENCIES OF THE SITUATION

The seizure was made some 20 minutes after the defendant deposited the package. As we have noted, the officers had more than reasonable cause to believe that the package contained weapons or explosives. Other members of the club who could immediately utilize the weapons were present at the clubhouse. In the concrete factual context of this case (see *People v Sloan,* 31 AD2d 832), to require that the police either have procured a warrant or immediately arrested the defendant and seized the package would be to ignore the practicalities of the situation (cf. *People v Lypka,* 36 NY2d 210, 215). In this case prompt, responsible police work defused a highly volatile situation with a minimum of risk to the public and to the police. The facts make it evident that the exigencies of the situation justified the conduct of the police in proceeding without a search warrant (cf. *Coolidge v New Hampshire,* 403 US 443).[3]

Accordingly, the judgment should be affirmed. The defendant also appealed from a purported order (actually the decision) denying the motion to suppress the seized evidence. The appeal therefrom should be dismissed. No appeal lies from a decision.

COHALAN, J. (dissenting). In my opinion the judgment should be reversed and the motion to suppress the evidence in question should be granted.

On April 10, 1971, at approximately 6:30 A.M., the defendant, a member of the Breed motorcycle club, was arrested at his home in Levittown, Nassau County, on a charge of possession of a weapon as a felony. A search conducted incident to

---

3. The decision of the Court of Appeals in *People v Gleeson* (36 NY2d 462) is not to the contrary. The searches conducted by the deputy sheriffs in that case took place in a crawl space under the defendants' cabin, an area in which, clearly, privacy was sought and expected. Further, unlike the situation in the instant case, the Court of Appeals, in *Gleeson,* found that "no exigent circumstances were present to justify the deputy's action" *(supra,* p 466).

that arrest revealed additional weapons and dangerous instruments and appliances, which were then seized. The evidence giving rise to the arrest involved a quantity of handguns and ammunition found in a closed package secreted by the defendant in the back yard of the Breed clubhouse in Roosevelt, New York, and covered with leaves. The package had been seized and opened, without a warrant, by one of the arresting officers after the defendant departed. That patrolman saw the defendant hide the package behind the garage on the premises at approximately 4:30 A.M. and was instructed by a superior officer, approximately 20 minutes later, to move in and seize it. The reason the policemen had been ordered to "stake out" the Breed clubhouse was that the Nassau County Police Crime Prevention Unit had received information that the Breed members and another group known as Hell's Angels were headed toward an armed conflict against each other in Nassau and that a fund-raising party for an unrelated matter was being conducted at the Breed clubhouse that night. Prior arrests of Breed members that evening had resulted in the confiscation of firearms, ammunition and explosives.

The issue on this appeal is directed to the propriety of the denial of the defendant's motion to suppress the physical evidence seized at both locations. In my view, since the warrantless search in Levittown can be validated only as incidental to a lawful arrest (*People v Loria,* 10 NY2d 368; *People v Lombardi,* 18 AD2d 177, affd 13 NY2d 1014; see *Chimel v California,* 395 US 752; *Ker v California,* 374 US 23; cf. *Harris v United States,* 390 US 234), and since the validity of the arrest here is itself dependent upon the propriety of the seizure behind the garage in Roosevelt (CPL 140.10), the admissibility of both groups of evidence must be held to rise or fall together. Under the facts here present, I think both seizures must fall.

To my mind, the Roosevelt garage area must be considered a protected area within the meaning of the Fourth Amendment (cf. *Coolidge v New Hampshire,* 403 US 443, 480) rather than a constitutionally unprotected "open field" as held by the Criminal Term (distinguish *Hester v United States,* 265 US 57; *Brown v United States,* 487 F2d 208, cert den 416 US 909; *United States v Swann,* 377 F Supp 1305; *United States v Wolfe,* 375 F Supp 949; but see *People v Swanberg,* 22 AD2d 902, mod 16 NY2d 649). If this be the case, it follows that the failure to obtain a warrant may not be lightly excused *(Cool-*

*idge v New Hampshire, supra,* p 454; *Chimel v California, supra,* p 762). "The most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.' 'The burden is on those seeking the exemption to show the need for it'" *(Coolidge v New Hampshire, supra,* pp 454–455).

It is precisely such showing which is lacking here, as the facts reveal only that the persons present when the package was secreted had departed the scene and that no one approached the spot during the next 20 minutes. While the package itself was not visible to the officers, its location was apparently in full view and any attempt to approach and/or remove it could not have gone unnoticed. Finally, it should be noted that the contents of the package were neither known nor knowable at the time of the seizure and that while probable cause may have existed to suspect the presence of contraband, such cause, standing alone, cannot justify a warrantless seizure *(Coolidge v New Hampshire, supra,* p 468; *Chimel v California, supra,* p 762; *Katz v United States,* 389 US 347, 357; *People v Davis,* 36 NY2d 280).

The People have failed to sustain their burden and suppression of the evidence was improperly denied *(Coolidge v New Hampshire, supra; Chimel v California, supra;* see *People v Baldwin,* 25 NY2d 66).

LATHAM, Acting P. J., CHRIST and MUNDER, JJ., concur with SHAPIRO, J.; COHALAN, J., dissents and votes to reverse the judgment and grant the motion to suppress evidence, with an opinion.

Judgment of the Supreme Court, Nassau County, rendered January 18, 1972, convicting defendant of possession of a weapon as a misdemeanor, upon a plea of guilty, and sentencing him to a conditional discharge for a period of one year and to a $1,000 fine, affirmed.

Appeal from a purported order of the same court, dated November 29, 1971 (actually a decision), denying defendant's motion to suppress evidence, dismissed.