Jones, J.
We hold that a warrantless search and seizure on private property was not, in the attendant circumstances, violative of constitutional protection against unreasonable search and seizure.
Defendant appeals from an order of the Appellate Division which affirmed a judgment of conviction, entered on a plea of guilty, of possession of a weapon as a misdemeanor. The weapon in question, a blackjack, was found in defendant’s possession at the time of his arrest for the prior possession of three handguns. Before the entry of his guilty plea defendant sought, unsuccessfully, to challenge the search and seizure which had produced the handguns, because the legality of his arrest, to which discovery of the blackjack was incident, depended on the lawfulness of the earlier search and seizure. That challenge is repeated in this court and our disposition of it will determine the appeal from the affirmance of the judgment of conviction.
On March 8, 1971 the Nassau County Police received a Nation-wide teletype that two motorcycle gangs—Hells Angels and Breed—were having a feud, that both gangs were armed and were headed for Nassau County. Four days later another teletype was received from the Suffolk County Police Department stating that the gangs were definitely going to have a feud, were armed, had bombs and had dynamite.
About 12:30 a.m. on the following April 10 a sergeant of the Nassau County Police Department and a member of the department’s Crime Prevention Unit stopped an automobile with a New Jersey license plate occupied by four members of the Breed gang who stated they were en route to the clubhouse of the Nassau County chapter of the gang located at 18 Gilbert Avenue, Roosevelt. The car was found to contain three sticks of dynamite with a five-foot fuse and two fully loaded sawed-off shotguns. News of the apprehension of these individuals was transmitted to police in the Roosevelt area and officers were promptly dispatched to stake out the Breed clubhouse. One officer in particular was commissioned to learn the nature of the activities at that location—whether there *451 was a war council or an impending battle—and to transmit information concerning persons and vehicles on the scene to outlying policemen. On assuming his post about 3:15 a.m. this officer observed cars with out-of-State licenses parked around the gang headquarters and persons in Breed regalia going in and out. To his knowledge, as a result of information he was supplying, persons coming from the building were being arrested and were found to be armed. At about 4:30 a.m. by the use of binoculars the officer saw defendant and two others leave a group of persons gathered outside the headquarters. Defendant carried a plastic package, left his companions and walked to the rear left corner of a detached garage located a few feet from the Breed building, some 150 feet from the officer’s stakeout position. The watching officer observed defendant bend down and noted that when defendant arose he no longer had the package in his hands. Defendant and his companions then left on motorcyles but there were other persons still at the building. The officer kept the spot behind the garage under constant surveillance for 15 to 20 minutes until he was ordered to move in. Going directly to the spot behind the garage where defendant had left the package the officer moved some leaves that appeared to have been pushed around and uncovered the parcel which was opened and found to contain three handguns, two of which were loaded, a canister of a parsley-like substance and "Seconal” pills.
It was about an hour and a half later when the sergeant and the police officer were arresting defendant at his residence for possession of the guns in the plastic package that the weapon involved in the crime to which defendant here pleaded guilty was found in plain view.
On this record we have no difficulty in concluding—as did both courts below—that the search for and the seizure of the weapons behind the garage, though made without a warrant, were both lawful.
In arriving at this conclusion our inquiry is whether the search and seizure were reasonable, for "[i]t must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures” (Elkins v United States, 364 US 206, 222; see, also, People v Perel, 34 NY2d 462, 466). While reasonableness ordinarily requires a warrant (Coolidge v New Hampshire, 403 US 443, 455), a number of exceptions to the general rule are recognized (United States v Edwards, 415 US 800, 802). The *452 facts surrounding the confiscation here in question bring it within one of those recognized exceptions—the existence of exigent circumstances which in consequence of the imminent danger reasonably apprehended excused the failure to obtain a search warrant. The searching officer had information that a gang war was in the offing and he had knowledge that members of one of the gangs were congregating at their clubhouse, that weapons had been found in the possession of those he had seen leaving the building, and that weapons, bombs and explosives had been confiscated from an out-of-State vehicle bringing members to the headquarters. He had also seen one of the gang remove a package from the building at an early morning hour and place it deliberately behind a nearby building.
In that setting the officer, charged with responsibility for protecting the public safety which might well be threatened by the activities of which he had been informed and which he had observed, was justified—indeed obliged—to move rapidly and decisively to ward off foreseeable imminent violence with attendant risk of a serious breach of the peace and possible injury to innocent members of the public. He acted responsibly in the seizure of the secreted package which he reasonably could have concluded contained weapons or explosives. He was not required, in view of the possible danger to the residents and the police officers in the surrounding neighborhood if such explosive contraband were to be put to its intended use, to expose those in the area to the risk which would be borne of the delay necessary to obtain a warrant.
In deciding as we do, we do not adopt the view taken at the Appellate Division that the area behind the garage was outside the protection of the Fourth Amendment. The premises were private property owned by the Breed organization of which defendant was president. By his conduct in covering the package with leaves defendant demonstrated an expectation of privacy—albeit of undeterminable extent. That expectation, however, was only one of the elements to be considered in determining the reasonablenss of the search. Also relevant was the relatively limited extent of the intrusion on the privacy when measured against the justification which existed for it (People v Perel, supra, pp 465-466). Here, the intrusion was lesser rather than greater, not extending into the primary building of the landowner or indeed into any building at all (cf. People v Gleeson, 36 NY2d 462); at the same time the *453 justification—the preservation of the public safety—was more than adequate.
We see no occasion to disturb this judgment of conviction.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.