■ The People of the State of New York, Respondent, v Earl Martin and Walter Washington, Appellants.—Appeals by (1) defendant Earl Martin from a judgment of the Supreme Court, Queens County, rendered May 3, 1974, convicting him of criminal possession of a dangerous drug in the third degree and possession of weapons, etc., as a felony, upon his plea of guilty, and imposing sentence and (2) defendant Walter Washington from a judgment of the same court, rendered April 2, 1975, convicting him of attempted criminal possession of a dangerous drug in the fourth degree, upon his plea of guilty, and imposing sentence. The appeals bring up for review an order of the same court, dated March 28, 1974, which denied defendants' motion to suppress certain physical evidence. Judgments and order reversed, on the law and the facts, motion to suppress granted, and indictments dismissed. On May 31, 1973, at about 12:05 A.M., the Oldsmobile in which defendant Martin was the operator, and codefendant Washington a passenger, was parked at 150th Street, approximately 100 feet south of 105th Avenue, Queens. The motor was running and the lights were off. At the suppression hearing both police officers (McCormack and Furey) testified that they passed the parked Oldsmobile in their radio car, stopped, and then observed the Oldsmobile with the two males seated in the front for about five minutes. They also observed other people "milling around" in the area, two or three of whom approached the Oldsmobile on the passenger's side. The officers then drove around the block and brought the radio car up directly behind the Oldsmobile in order to make a routine safety check or traffic check. After defendant Martin handed McCormack the registration

and a driver's permit, the latter asked Martin to step out of the car. After Martin did so, McCormack reopened the door on the driver's side in order to check the VIN number. As he stooped down to check the VIN number, he observed a .32 caliber revolver near the foot pedals; it would not have been visible had Martin remained in the vehicle. After picking up the weapon, McCormack ordered defendant Washington to leave the vehicle, searched him and found a .38 caliber revolver in his waistband. After both defendants were arrested and placed in the radio car, McCormack returned to the Oldsmobile and found a paper bag in the console. The bag contained a quantity of glassine bags of heroin. In justifying the arrests, the People argue that McCormack and Furey were under a duty to approach the driver of the Oldsmobile in order to make a routine traffic and identifying check since they had observed what to them was "unusual street activity" consistent with drug trafficking. We disagree. The arbitrary stop of a single vehicle for a "routine traffic check" is impermissible unless there exists reasonable suspicion of a violation of the Vehicle and Traffic Law (*People v Ingle*, 36 NY2d 413). In the instant case, McCormack admitted that the Oldsmobile had a valid license plate and inspection certificate, and that during his and Furey's observation of the vehicle, the defendants did not move it or do anything of note. With respect to the purported "unusual street activity", McCormack conceded that most of the people on the sidewalk at the time were just "milling around"; the two or three individuals who did approach the Oldsmobile on the passenger side were doing "nothing really". Thus, the testimony of the arresting officers as to the reasons for their making the traffic check herein was devoid of facts indicating a violation of law. Consequently, we conclude that the police officers' intrusion was not reasonably warranted (see *People v Ingle, supra; People v Allende*, 39 NY2d 474; *People v Murray*, 48 AD2d 907; *People v Puglisi*, 51 AD2d 695). Martuscello, Acting P. J., Cohalan, Rabin and Mollen, JJ., concur.