OPINION OF THE COURT
Joseph J aspan, J.
The defendant, alleging in effect, an unlawful search by a coemployee, moves to suppress physical evidence consisting of *317 a calibration card now in the possession of the District Attorney.
The indictment charges the defendant, the Chief Safety Officer at Kings Park Psychiatric Center, a State institution, with tampering with physical evidence (Penal Law, § 215.40) in that he allegedly made, devised and prepared a false record of speedometer tests with intent that it be used in a District Court proceeding and with two counts of official misconduct (Penal Law, § 195.00) as a result of the same conduct and upon the additional allegation that defendant falsely prepared a radar certification on a simplified traffic information with intent to injure another person.
In accordance with the provisions of section 7.25 of the Mental Hygiene Law, safety officers are designated as peace officers while performing duties in or arising out of the course of their employment. The statute defines their duties as those necessary "to preserve peace and good order in department facilities and to fully protect the grounds, buildings, and patients”. It also gives them authority "to issue and serve a simplified traffic information and appearance ticket”.
The calibration card which forms the basis for the charge of tampering with physical evidence certifies, after State Police test, the accuracy of the speedometer of the enforcement vehicle and it can be used upon a trial to support the charge that a paced car exceeded the permissible limit.
Safety Officer Vincent Ciulla testified that he came into possession of this card when the defendant, his immediate superior, arbitrarily updated it in June, 1976 with fabricated test results and gave it to him for use in an impending trial. His testimony is to the effect that he thereafter refused to use the card and retained possession until he gave it to a detective in September, 1977.
The defendant, on the other hand, denies that he made any entries on the card or that it was given to Ciulla or that it was needed as evidence at a trial. He alleges that he does not know who took the card from his locked file cabinet and that in July, 1977 he reported the theft.
A letter from the director of the psychiatric center subscribed and sworn to on April 18, 1978 states that no official files and/or records are to leave the premises without his express permission.
Two other safety officers testifed upon behalf of the defend *318 ant in support of a denial of tampering or a release of the records to Ciulla. However, upon cross-examination, Officer Joseph Montana testified that he and other officers had access to the file cabinet which was open and available during the day.
Obviously, there is a factual issue as to whether the defendant gave the calibration card to Officer Ciulla or whether this officer removed it from the cabinet without permission. A resolution of this issue would be critical to a determination of the trial issues for if it was not so delivered to Ciulla for use in a pending trial, the People’s case as to those counts would be seriously weakened. No such determination need be made at this time to resolve the suppression issue here presented, although I do find that the defendant had standing to bring this motion (Mancusi v DeForte, 392 US 364).
If Officer Ciulla made the search, he was doing so as a private citizen and not as a peace officer because such conduct was not within the defined or implied scope of his official duties as expressed in the Mental Hygiene Law. The surreptitious removal of the calibration card was not designed to preserve peace and good order on the State’s facilities.
Nor was he an agent of the government to whom the Fourth Amendment prohibitions apply. (People v Smith, 82 Misc 2d 204.) He maintained private possession of the calibration card from June, 1976 to September, 1977 and the case was thereafter presented with an indictment handed up on December 22, 1977.
An unauthorized search and seizure by a private person does not violate constitutional limitations (US Const, 4th Amdt; NY Const, art I, § 12). These constitutional proscriptions are directed at governmental, and not private, activity (see Burdeau v McDowell, 256 US 465, 475; People v Horman, 22 NY2d 378, 381, cert den 393 US 1057; Sackler v Sackler, 15 NY2d 40, 43; People v Gleeson, 36 NY2d 462).
Further, the evidence is clear that the cabinet in defendant’s office was open and available to his fellow employees in his command and the file cabinet was not reserved for the private use of the defendant and was not an area in which the defendant expected privacy. The subject document was maintained in aid of the functions of the safety officers and did not constitute private papers.
The motion to suppress the physical property is denied.