■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY N. LA BORDE and IRVING PLEASANT, Also Known as IRVING MASON, Also Known as BUTCH MASON, Appellants.—Appeals by defendants from two judgments (one as to each of them) of the Supreme Court, Suffolk County, both rendered December 15, 1977, convicting each of them of criminal possession of a weapon in the third degree, upon their pleas of guilty, and imposing sentence. The appeals bring up for review the denial, after a hearing, of defendants' motion to suppress certain physical evidence. Judgments reversed, on the law, motion to suppress granted, indictments dismissed, and case remitted to the Supreme Court, Suffolk County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. The weapons that underlie the criminal charges were found when a Suffolk County police officer responded to a radio call of "a suspicious vehicle". That suspicion was based upon what a neighborhood resident had telephoned to the police, to wit, that on the street in front of her house at about 10:00 o'clock in the morning of a December day, she saw two Black men put on dark-colored sweaters in a U-Haul van with Michigan license plates. By the time the police officer arrived, the men had driven away in a "gray" car. There was no suggestion that the van was illegally parked or abandoned. There was no hint that the vehicle was stolen or that it contained contraband. Nonetheless, when the officer spied a burlap bag between the two front seats as he walked around the U-Haul van, he opened the unlocked door, removed the bag and searched it. (We agree with the trial court's rejection of the officer's testimony that he saw a pistol protruding from the bag.) Inside the bag he discovered a loaded weapon and what appeared to be a ski mask, and radioed for assistance. The police officer then returned to the van and removed three other bags, in which he found two more weapons. As our court has stated on analogous facts, "the officer's intrusion into the vehicle and removal of the package [here a burlap bag] cannot be justified on any theory * * * Where a vehicle is not abandoned and is not lawfully in the custody of the police, the only justification for a warrantless

vehicular search is probable cause *(Chambers v Maroney,* 399 US 42, 51; cf. *Cooper v California,* 386 US 58; *Cady v Dombrowski,* 413 US 433)" *(People v Hermesch,* 49 AD2d 587, 588). Even assuming that what the neighborhood resident saw and reported to the police comprises "suspicious or unusual street action" *(People v Rivera,* 14 NY2d 441, 444, cert den 379 US 978), the intrusion exceeded the level of inquiry or investigation the facts warranted (see *Terry v Ohio,* 392 US 1; *People v Allende,* 39 NY2d 474; *People v Cantor,* 36 NY2d 106). So-called "automobile exceptions" to the Fourth Amendment to the United States Constitution have never permitted a search on *mere suspicion* (see, e.g., *Chambers v Maroney,* 399 US 42; *Carroll v United States,* 267 US 132; *United States v Payne,* 429 F2d 169; *People v Collier,* 56 AD2d 634). (We are not concerned here with routine inventories of impounded automobiles, as in *South Dakota v Opperman,* 428 US 364.) As our Court of Appeals said recently in *People v Clark* (45 NY2d 432, 439): "whereas warrantless searches of automobiles have been sustained in cir-cumstances that would not justify a similar search of a building *(Cady v Dombrowski,* 413 US 433), there is no blanket 'automobile exception' to the constitutional protections against unlawful searches and seizures *(Preston v United States,* 376 US 364; *People v Spinelli,* 35 NY2d 77)." *People v Kreichman* (37 NY2d 693), relied on by the trial court, is not to the contrary. There, a warrantless search of a motor vehicle stopped on a public highway was sustained upon the existence of probable cause. An investiga-tive stop based on reasonable suspicion graduated to probable cause when the automobile sped off after the police identified themselves. Following the unlawful search of the U-Haul van, the police stopped a red car in which defendants were driving when they saw the car twice pass by on streets adjacent to the U-Haul van. This stop was also illegal under constitutional standards. If the stop is premised on what had been discovered during the unlawful search of the van, it fails as derivatively illegal (see *Wong Sun v United States,* 371 US 471; *People v Gleeson,* 36 NY2d 462; *People v Cantor, supra).* If the stop is premised on a reasonable suspicion that criminal activity was afoot, it is equally infirm. All the police saw before they radioed to have the car stopped was its presence in the neighborhood of the van. It did not match the neighborhood resident's description of a "gray" car in which the two Black men from the van had driven off. The stopped car was *red and contained* three Black men. The only apparent nexus between the two automobiles is the ethnic identity of the men, an insufficient basis upon which to premise reasonable suspicion (see *People v George T.,* 39 NY2d 1028, revg 48 AD2d 779, on dissenting memorandum of Stevens, P. J.). The stop of an automobile even for a "routine traffic check" must be premised on reasonable suspicion of a violation of the Vehicle and Traffic Law *(People v Ingle,* 36 NY2d 413; *People v Martin,* 56 AD2d 876; accord *People v Sobotker,* 43 NY2d 559). If a stop is premised on other "suspicious activity", it must meet the standard enunciated in *Terry v Ohio (supra)* for the stop of a pedestrian, "specific and articulable facts" that permit the reasonable inference that criminal activity is afoot and that an intrusion is warranted *(People v Cantor, supra; People v Sobotker, supra; People v Ingle, supra; People v Martin, supra).* Since the automobile was illegally stopped, the plastic tag, or disc, "in plain view" on the floor of the car could not be seized. The "plain view" doctrine requires that there be *prior justification* for the intrusion, during which a piece of evidence is inadvertently seen *(Coolidge v New Hampshire,* 403 US 443, 466). "Plain view *alone* is never enough to justify the warrantless seizure of evidence" *(Coolidge v New Hampshire, supra,* p 468 [emphasis in original]). In short, the officer must

have a right to be in the place where he sees incriminating evidence in "plain view", which was not the case here. Gulotta, J. P., Cohalan, Margett and O'Connor, JJ., concur.