Hancock, Jr., J.
(dissenting). The majority bases its affirmance on facts which have not been found after an evidentiary hearing or accepted as true by either lower court and, indeed, which those courts did not even consider relevant or necessary to their decisions. Instead of remitting the matter for a hearing, the majority simply makes two critical assumptions: (1) that defendant failed to post "no-trespassing” signs or to take other steps to exclude the public, and (2) that the premises searched were "open fields”. The court, thus, finds it unnecessary to answer the important questions presented by defendant on this appeal:
(1) whether the warrantless aerial surveillance of defendant’s premises, with the aid of binoculars, from a helicopter, hovering at an altitude of 600 feet, violated defendant’s reasonable expectation of privacy under the Fourth Amendment of the Federal Constitution, notwithstanding the Supreme Court’s decision in California v Ciraolo (476 US 207); or, whether it did so under article I, § 12 of the New York State Constitution; and
(2) whether no-trespassing signs or other indicia of efforts to exclude the public are relevant in ascertaining the extent of an owner’s legitimate expectation of privacy under our State Constitution — as contradistinguished from the Supreme Court’s "open fields” doctrine under the Fourth Amendment (see, Oliver v United States, 466 US 170; United States v Dunn, 480 US 294, 107 S Ct 1123) — in wooded lands, isolated rural areas, and in the buildings in the immediate vicinity of the home.
This case cannot be decided as the courts below sought to do —by simply applying the Supreme Court’s decisions in Ciraolo and Oliver. Those cases differ from this one, and, in any event, have not been ádopted by this court — nor do I think that they should be — as the measure of protection under our State Constitution. Moreover, the questions before us cannot be resolved under our State Constitution without a determination, at an evidentiary hearing, of the facts relevant to defendant’s claim of an expectation of privacy in the premises. *560 Because the majority declines to remit the matter for a hearing and, instead, grounds its affirmance on factual assumptions not warranted by the record, I respectfully dissent.
I
The basis of the majority’s affirmance is different from that of either court below. County Court held no hearing and did not determine whether defendant’s greenhouse was in "open fields”. Instead, relying solely on federal law, that court concluded that both the helicopter surveillance and the initial portion of the foot search were lawful under Oliver regardless of what might be developed at a hearing. The Appellate Division, likewise, found the aerial surveillance and the foot search entirely permissible under federal law without addressing the state constitutional questions. Relying on Ciraolo, the court held that there could be no Fourth Amendment objection to the aerial observation of the greenhouse because there is "no reasonable expectation of privacy from such observation”, regardless of the location of the greenhouse in the "open fields” or the "curtilage”. Additionally, the court upheld the foot search on the authority of Oliver, without considering whether defendant had taken any measures to exclude the public from the premises or whether, for some other reason, she was justified in expecting her prémises to be treated as private. Now, in affirming the order below, the majority of this court makes its own factual determinations and, apparently, sees no ground for distinguishing the Supreme Court’s decisions or need to articulate the applicable State rules.
In the motion papers submitted in support of suppression, defendant’s counsel affirmed that "the location where the marihuana was found could not be seen from the road”, that it "was located within the 'curtilage’ of the house”, that it was "not in open view”, that it was not part "of an open field”, and that it was "if anything, hidden in enclosed areas”. These factual allegations, based on counsel’s personal inspection of the premises, are clearly sufficient to entitle defendant to an evidentiary hearing. They can hardly be characterized els conclusory; they are statements of fact which could be established at an evidentiary hearing.[1]
*561 The defense counsel’s assertions, uncontraverted by any factual statement in the reply papers of the Assistant District Attorney or in any other documents in the record, are, in fact, supported by the investigation reports, the application for the search warrant, and the warrant itself. The investigation report pertaining to the aerial surveillance refers to the greenhouse as being "a short distance away [emphasis added]” from the residence. The warrant application and the warrant state that the premises encompass the residence and the other outbuildings as one group, "including a greenhouse like structure with a removable roof and surrounding field, occupied & inhabited by Katherine Reynolds”. Moreover, the residence is described in a police memorandum as being in an "isolated location [emphasis added]” and "a considerable distance” from Columbia County Route No. 8. There can be no question that a hearing is required under our statutes and case law (CPL 710.60, 710.70; People v Millan, 69 NY2d 514, 521; People v Abbott, 94 AD2d 831).
The majority, however, without the benefit of any fact-finding process and relying solely on its de novo analysis of the record, has made its own factual determinations, apparently rejecting defense counsel’s affirmations. The majority states that defendant’s property bore "no manifestation of the owner’s subjective expectation of privacy other than is naturally provided by the land’s woods and contours,” that the "photographs graphically depict the separation of that area [where the marihuana was found] by distance and terrain from defendant’s house”, and that defendant’s conduct and activity were "readily open to public view.” Such fact finding is beyond the power of this court and, moreover, is not supported by the evidence. By no means do the photographs establish lack of efibrts to exclude the public, the absence of natural boundaries shielding the property from public view, the distance of the greenhouse from the residence, or that evidence was found in "obviously open areas”. Defense counsel’s unrefuted factual statements based on his own observations — that the marihuana plants were found within "the curtilage” of defendant’s house, not in an "open field”, but "hidden in enclosed areas” — raise questions of fact that must be resolved.
II
Nor, in my view, do the recent Supreme Court decisions *562 provide a basis for the outright rejection of defendant’s claim of an expectation of privacy. First, the Supreme Court has held that the "open fields-curtilage” issue framed in Oliver is to be resolved by examining various factors including proximity of the area to the home, whether it is enclosed, how it is used, and what if any steps have been taken to render it private (United States v Dunn, 480 US, at —, 107 S Ct, at 1139, supra). Consideration of the factors outlined in Dunn obviously calls for fact finding.
Second, the Supreme Court in Ciraolo merely held that "naked-eye observation of the curtilage by police from an aircraft lawfully operating at an altitude of 1,000 feet” does not violate an expectation of privacy under the Fourth Amendment (California v Ciraolo, 476 US 207, 213, supra [emphasis added]). And in Dow Chem. Co. v United States (476 US 227), decided the same day, the court upheld the high altitude warrantless surveillance of a large outdoor manufacturing facility, with the use of sense enhancing equipment. The court explained that "the Government has 'greater latitude to conduct warrantless inspections of commercial property’ ” than of "an area immediately adjacent to a private home, where privacy expectations are more heightened” (id., at 237, n 4). Read together, Ciraolo and Dow certainly provide no clear authority for aerial surveillance of a greenhouse in the immediate vicinity of a residence, where the surveillance is conducted in a "hovering” helicopter, with the aid of binoculars, at a height of 600 feet.[2]
Third, the Supreme Court precedents are not, in any event, controlling under our State Constitution. Indeed, there are good reasons why our State rules should be different (see, Oliver v United States, 466 US 170, 189 if [Marshall, J., dissenting]; California v Ciraolo, 476 US 207, 216, and 223-225 [Powell, J., dissenting], supra; see also, discussion in 1 LaFave, *563 Search and Seizure § 2.3 [g], at 421-424; § 2.4 [a], at 428-429 [2d ed]).
Ill
As to both the warrantless aerial and foot searches, a hearing should be ordered to determine whether defendant had a protectable expectation of privacy, under either State or Federal law, in the areas surveilled (see, People v Perel, 34 NY2d 462, 466; People v Mercado, 68 NY2d 874, 875-876; Katz v United States, 389 US 347, 361 [Harlan, J., concurring]). At the hearing, the suppression court should consider, among other things: the nature, use and location of defendant’s property; whether the property was rural or isolated and the extent to which it was secluded or otherwise hidden from public view; the distance of the property from public thoroughfares or air routes and the volume and type of related traffic; the use of signs or other devices to warn or exclude trespassers; the distance of the area searched from the residence; and the manner in which the aerial and foot searches were conducted, including their scope and duration, what, if any, sense enhancing devices were employed, and the over-all degree of intrusiveness on the owner’s property and privacy (see, People v Farenga, 42 NY2d 1092 [defendant’s activities overt]; People v Doerbecker, 39 NY2d 448, 452 [defendant’s efforts at seclusion]; People v Gleeson, 36 NY2d 462 [officers’ trespass]; People v Spinelli, 35 NY2d 77 [use of binoculars]; United States v Allen, 675 F2d 1373 [frequent Coast Guard overflights]; United States v Broadhurst, 612 F Supp 777 [defendant’s property secluded]; National Org. for Reform of Marijuna Laws v Mullen, 608 F Supp 945 [observation from hovering helicopter]; United States v Taborda, 491 F Supp 50 [use of telescope]; see, discussion of factors employed in Federal courts, United States v Bassford, 601 F Supp 1324, 1330).
For these reasons, I am persuaded that under governing state and federal law the order should be reversed and the matter remitted to County Court for an evidentiary hearing.
Chief Judge Wachtler and Judges Simons and Bellacosa concur with Judge Dillon;* Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Judges Kaye and Alexander concur.
Order affirmed.

. This is no less true for the statement that the greenhouse "was located within the 'curtilage’ of the house”. This assertion about the greenhouse is the equivalent of stating that it was in the yard near or belonging to the house — as, indeed, appears to have been the case. "Curtilage” is defined in Webster’s New 20th Century Dictionary as "in law, a yard, garden, enclosure, or field near and belonging to a dwelling”.

. See, Riley v State (511 So 2d 282 [Fla], cert granted sub nom. Florida v Riley — US —, 98 L Ed 2d 977) where the Florida Supreme Court, distinguishing Ciraolo and Dow, held that the defendant’s privacy rights were violated where an aerial surveillance of a greenhouse on defendant’s property was conducted from a helicopter hovering at about 400 feet. We agree with that court that it is difficult to "believe that society is prepared to say that individuals relinquish all expectations of privacy in their residential yards merely because they have not taken the extraordinary steps required to protect against all types of aerial surveillance” (id., at 288-289 [emphasis in original, footnote omitted]).
Significantly, that court had the benefit of the suppression court’s factual findings after a full evidentiary hearing.

 Designated pursuant to NY Constitution, article VI, § 2.