OPINION OF THE COURT
Ira J. Raab, J.
*923 A police radio transmission of a “part of a partial plate” of a “dark Ford” is insufficient information to support the “reasonable suspicion” requirement for the non-traffic-violation stop of a light green and tan, two-tone Ford Bronco II truck, spotted 35 minutes after the transmission, proceeding alone “toward” the scene of the crime, at 4:30 a.m., a mile and a half from the scene. The “fruit of the poisonous tree” doctrine cancels out the “plain view” doctrine. Crime proceeds found in “plain view” in the vehicle after the illegal stop are suppressed. Case dismissed. The issue of a “part of a partial plate” is a matter of first impression.
THE CHARGES
Defendant, Andrew Scheu, was arrested on August 30, 1997 and charged with two counts of criminal possession of stolen property in the fifth degree, a class A misdemeanor, in violation of Penal Law § 165.40, and one count of possession of burglar’s tools, a class A misdemeanor, in violation of Penal Law § 140.35.
THE HEARING
A probable cause and Mapp hearing was held before this court on May 5, 1998, limited to the seizure of automobile parts and a wire cutter found on August 30, 1997, in a light green and tan, two-tone Ford Bronco II, bearing New York State registration plate number S953NS, owned and operated by defendant Andrew Scheu, which vehicle was stopped by Police Officer Raymond Thomas, a two-year veteran of the Nassau County Police Department, the sole witness for the People. The filings of memoranda of law were completed on July 14, 1998.
THE FACTS
The officer was patrolling alone in a marked police car on August 30, 1997, at about 3:40 a.m., in Massapequa Park, Nassau County, New York, when he received a radio transmission that a larceny from an auto had just occurred at 455 Roosevelt Avenue, Massapequa, New York, and that the perpetrators left the scene in a “dark colored Ford, possible partial New York State license plate number SP”. Under cross-examination, the officer said that he received the radio transmission at 3:50 p.m., and that it was a “dark colored Ford, partial plate WP”, and that “one of the subjects involved had a pony tail, with a baseball cap on”.
At about 4:15 a.m., 35 minutes after receiving the radio transmission, and about a mile and a half from the scene of the *924 crime, the officer was proceeding on Carmans Road, Massapequa, toward the scene of the crime, in an attempt to intercept the perpetrators, when he noticed ahead of him the defendant’s vehicle proceeding on Carmans Road. The defendant’s vehicle had made a right turn onto Carmans Road, heading in the same direction as the officer, toward the scene of the crime. The traffic was light to none, and there were no other vehicles on the road. The officer followed the defendant’s vehicle for a quarter of a block, when the defendant’s vehicle slowed down from a constant speed to make a left turn. During the turn, the officer, with police flashing lights on, stopped the defendant’s vehicle. Prior to the stopping of the defendant’s vehicle, it did not commit any Vehicle and Traffic Law infractions. The defendant’s vehicle stopped at once, without attempting to evade or elude the officer. The officer did not testify that he noticed any of the people in the defendant’s vehicle before the stop. Nor did he testify that he noticed the license plate of the defendant’s vehicle before the stop.
While anticipating the arrival of a back-up unit, the officer “attempted to receive a driver’s license and insurance card, ‘as if’ I was doing a regular traffic stop from the driver”. As he approached the defendant’s vehicle from the rear driver’s side, with a flashlight shining into the vehicle, the officer noticed three people in the vehicle, including a female passenger in the back seat who was wearing a baseball cap and a ponytail. He also noticed car parts in the uncovered rear cargo area of the vehicle. The defendant driver seemed inquisitive and confused as to why he was pulled over.
When the back-up officer arrived, the three people were asked to exit the vehicle. The vehicle was searched, and car parts, later identified by the complainants as the complainants’ property, were removed from the open cargo area in the back of the vehicle. The defendant, a male passenger, and the female passenger were arrested. At 9:00 a.m., during a vehicle-impounding inventory search, the officer found a wire cutter in the vehicle. However, the officer did not have the vehicle in his custody from 4:50 a.m., when the vehicle left the scene of the stop, until 9:00 a.m., when he conducted the inventory search, nor did he know who had custody of the vehicle during that period. The car parts and wire cutter were seized, inventoried, photographed, and held as evidence.
The officer testified that he stopped the defendant’s vehicle for two reasons, namely, “the proximity to the area” and the “partial description of the vehicle”, in that “I simply assumed *925 that the complainant inverted the 9 as a P”. Later on, in cross-examination, the officer gave two additional reasons, namely, “the time of night factor” and “no other vehicles on the road”. Still further on, in cross-examination, the officer gave an additional reason, namely, “the pony tail”. The officer appeared to be periodically adding reasons as he went along in his testimony. It is noted that the officer’s notes about his observations when the vehicle was pulled over made no mention of the ponytail on the female passenger.
CONCLUSIONS OF LAW
A police officer may make a nonpretextual stop of a motor vehicle if the officer observes the vehicle commit a violation of the Vehicle and Traffic Law, or if the stop is part of a valid nonarbitrary, nondiscriminatory, roadblock or checkpoint, conducted under uniform procedures. (People v Spencer, 84 NY2d 749 [1995].) That is not the case here. This case involves a claimed stop of a motor vehicle based upon “reasonable suspicion” that the occupants of the vehicle had committed a larceny, and had absconded from the scene of the crime.
A police officer may conduct an investigatory stop of a motor vehicle if the officer has “reasonable suspicion” to believe that the driver or occupant of the vehicle has engaged in, is engaging in, or is about to engage in, a criminal activity or wrongdoing, based upon reliable information and the totality of the circumstances. There must be a particularized and objective basis for suspecting criminal activity of the person stopped. It involves a two-step process from the point of view of a trained and experienced officer. First, an assessment based upon all of the circumstances, and second, a suspicion must be raised as to the particular person’s wrongdoing. (United States v Cortez, 449 US 411 [1981].)
The Fourth Amendment’s protection against unreasonable searches and seizures applies to the States through the Fourteenth Amendment. (US Const 4th, 14th Amends.)
The stopping of a vehicle is equivalent to an investigatory detention, which must be justified, at the time of the initiation or inception of the stop, by reasonable, articulable suspicion, based upon specific and objective facts, in order to satisfy the Fourth Amendment’s protection, and not by inarticulate hunches, intuition, gut reaction,, whim, caprice, idle curiosity, or simple good faith of the officer. (Terry v Ohio, 392 US 1 [1968]; United States v Green, 111 F3d 515 [7th Cir 1997]; People v Ingle, 36 NY2d 413 [1975].)
*926 When a vehicle is stopped by a police car with red lights flashing, it is the equivalent to a deprivation of free movement and liberty because the driver is under a reasonable belief that ignoring a police officer is no option and that he must submit to the show of authority. Such a stop requires reasonable suspicion. (United States v Jerez, 108 F3d 684 [1997].)
When a police officer illegally stops a vehicle because of a lack of reasonable suspicion, he cannot legally seize contraband or incriminating evidence that he inadvertently sees in “plain view” in the vehicle. The “fruit of the poisonous tree” doctrine cancels out the “plain view” doctrine. (Coolidge v New Hampshire, 403 US 443 [1971]; People v La Borde, 66 AD2d 803 [1978].)
In People v Hernandez (— Misc 2d —, —, 1998 NY Slip Op 98454 [Sup Ct, Bronx County, July 13, 1998]), the court sustained a motor vehicle stop based upon “reasonable suspicion” when the police radio transmission described the wanted vehicle as a “green Isuzu Rodeo truck with tinted windows” (emphasis added). The defendant’s vehicle was spotted and stopped 10 minutes later, a half mile from the scene of the crime. In the within case, the meager description of a “dark Ford” was not specific enough to describe the stopped “light green and tan, two tone Ford Bronco II truck”.
In People v Crump (217 AD2d 902, 903 [4th Dept 1995]), the Court sustained suppression due to the lack of “reasonable suspicion” where the radio transmission described the wanted vehicle as a “dark-colored vehicle, possibly a Cadillac”. This description is similar to the “dark Ford” description in the within case.
The People in the within case rely on what they describe as a “partial plate” as an element of “reasonable suspicion”. In fact, the plate description in the within case is only a “part of a partial plate”. The defendant’s vehicle’s plate number had six digits. The police radio transmission of “SP” was only part of the plate number. But even the partial plate description that was given, was, itself, only partially accurate. The defendant’s vehicle plate number did not have the “P”. The court holds that a “part of a partial plate” number is insufficient to satisfy the “reasonable suspicion” requirement. Nevertheless, if one factors in the officer’s cross-examination testimony that the partial plate that was transmitted was ‘WP”, then the entire issue of a partial plate may be discounted, because there was also no “W” in the defendant’s vehicle’s plate number.
The other grounds for “reasonable suspicion”, namely, the “time of night factor” and “no other vehicles on the road”, do *927 not rise to “reasonable suspicion”. There is nothing suspicious about a lone vehicle proceeding on a road at 4:15 a.m. Also, the defendant’s vehicle was proceeding “toward” the scene of the crime, and not “away” from the scene.
Finally, the court rejects the ground of the “ponytail”. The court believes that this ground was an afterthought, following extensive cross-examination. The officer never testified that he noticed the “ponytail” before the vehicle was stopped. Furthermore, the fact of a “ponytail” was not contained in the officer’s notes of the incident.
In summary, the court finds that the radio transmission was insufficient to give the officer “reasonable suspicion” to stop the defendant’s vehicle. The fact that the proceeds of the larceny were found in the vehicle after the improper stop does not change the results.
CONCLUSION
The court had the opportunity to hear and evaluate the officer’s testimony, and to observe the officer’s demeanor in answering the questions of the Assistant District Attorney and of the defense counsel. Based upon the credible testimony, the court concludes that the officer did not have “reasonable suspicion” to stop the defendant’s vehicle.
Accordingly, the court grants the defendant’s application to suppress the seized evidence, and any information obtained therefrom, thereby suppressing the use of the seized evidence upon the trial of the defendant and restraining and precluding the People from using said evidence and the photos of said evidence upon the trial of the defendant. The three informations against the defendant are hereby dismissed.